KOSKI, Appellant,

v.

WILLOWWOOD CARE CENTER OF BRUNSWICK, INC., Appellee.

[Cite as Koski v. Willowwood Care Ctr. of Brunswick,
Inc., 158 Ohio App.3d 248, 2004-Ohio-2668.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 03CA0083–M.

Decided May 26, 2004.

Michael Terrence Conway, for appellant.

Geoffrey E. Webster and Eric Hershberger, for appellee.

———————————

BAIRD, Judge.

{¶ 1} Appellant, Eric Koski, appeals the judgment of the Medina County Court of Common Pleas that granted a directed verdict in favor of the appellee, Willowwood Care Center of Brunswick, Inc. ("Willowwood"). We affirm.

I

{¶ 2} Koski was employed by Willowwood as a nursing home administrator. He worked for the company from March 1996 through February 11, 2002. On March 14, 2002, Koski filed a complaint with the Medina County Court of Common Pleas, claiming that Willowwood had discriminated against him on the basis of his gender, in violation of R.C. 4112.02, and also on the basis of his marital status, in violation of Ohio public policy.

{¶ 3} Willowwood filed a motion for summary judgment on August 11, 2002. The trial court granted Willowwood's motion with respect to the marital-status claim but overruled the motion with respect to the gender-discrimination claim. On June 9, 2003, the matter proceeded to a jury trial on the gender-discrimination claim.

{¶ 4} At the close of Koski's case, Willowwood moved for a directed verdict, claiming that Koski had failed to establish a prima facie case of gender discrimination. The trial court granted the motion. This appeal followed. Koski raises one assignment of error, and Willowwood also raises one assignment of error, pursuant to App.R. 3(C)(2).

## II

### Appellant's Assignment of Error

The trial court prejudicially erred when it dismissed the plaintiff's case based upon the defendant's motion for directed verdict finding in effect that it is not discrimination based upon sex when a male plaintiff and his [fiancée] co-worker who are equally subject to an alleged company anti-dating policy are accused of violating the same, and only the male is disciplined for the sole reason he had a supervisory job title at the relevant time.

{¶ 5} In his sole assignment of error, Koski argues that the trial court erred by granting Willowwood's motion for a directed verdict. We disagree.

{¶ 6} We review de novo the trial court's grant of a directed verdict. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. Directed verdict motions are governed by Civ.R. 50(A)(4), which provides:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 7} A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. Where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. However, when the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141.

{¶ 8} During his tenure with Willowwood, Koski began dating one of his coworkers, Linda Talpas. Talpas was a nurse at the nursing facility where Koski was an administrator. The two eventually became engaged and are now married. The owner of Willowwood, Edward Telle, first became aware of the relationship during a Caribbean cruise he took with several Willowwood employees, including

Koski and Talpas. After the group returned to Ohio, Telle directed Koski to meet with him and the company's counsel, Geoffrey Webster, at Webster's office in Columbus.

{¶ 9} At the meeting, Telle and Webster advised Koski that his relationship with Talpas had created a problem and that Koski needed to remedy it. Soon after the meeting, Koski was suspended for two weeks without pay, pending an investigation of the situation. After the investigation was completed, Koski received a letter from Webster informing him that, as a result of the investigation, he would be demoted to the position of assistant administrator and that his pay would be cut from $55,000 per year to $38,000 per year. Koski did not return to his position at Willowwood after receiving the letter.

{¶ 10} Koski maintains that he was constructively discharged as punishment for dating one of his coworkers. In contrast, as Koski points out, that coworker, Linda Talpas, was not disciplined at all for engaging in the very same conduct. Koski presents this contrast as the foundation of his gender-discrimination claim.

{¶ 11} It is an unlawful discriminatory practice for any employer to "discharge without just cause, to refuse to hire, or otherwise discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of, among other things, gender. R.C. 4112.02(A). The Ohio Supreme Court has held that federal case law construing Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

{¶ 12} Plaintiffs may show that they were the victims of a discriminatory practice by either direct evidence or indirect evidence; Koski has pursued the latter route. Ohio courts analyze R.C. Chapter 4112 discrimination claims that are based upon indirect evidence under the framework provided by *McDonnell Douglas v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 13} Under *McDonnell Douglas,* a plaintiff may make a prima facie showing of discrimination by establishing that he (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and that (4) a comparable nonprotected person received better treatment. See *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 581, 582. Koski attempted to make out his prima facie case under this "disparate treatment" formula.

{¶ 14} Koski maintains that as a male, he is a member of a protected class, that he suffered adverse employment action in the form of a constructive discharge, that he was qualified for his position at Willowwood, and that Talpas is a comparable nonprotected person and received better treatment. The trial court

based its directed verdict upon its finding that Koski failed to establish the fourth prong of his prima facie case, by failing to show that Talpas is a comparable nonprotected person.

{¶ 15} In order to establish that a comparable nonprotected person received better treatment, the plaintiff must show, at a minimum, that "for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d at 583. In *Mitchell*, the Sixth Circuit Court of Appeals delineated a series of affinities ordinarily essential to a showing that employees were similarly situated to one another: "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. However, the Sixth Circuit later cautioned against a narrow construction of the *Mitchell* case, explaining that "we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." (Emphasis sic.) *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 353.

{¶ 16} It is undisputed that Koski was a supervisor at Willowwood and that Talpas was not. Koski maintains that, notwithstanding this disparity in their authority, he and Talpas were indeed similarly situated in all relevant respects. Specifically, Koski argues that if Willowwood did have an antidating policy in place at the time of the disciplinary action against him, it applied to all employees equally. Koski maintains that because the policy, if it indeed existed, did not distinguish between employees based upon their rank within the company, such a distinction is not relevant to a determination of whether he and Talpas were similarly situated. We disagree.

{¶ 17} In practical terms, two employees are not similarly situated in all relevant respects if there is a meaningful distinction between them that explains their employer's different treatment of them. See *Ercegovich*, 154 F.3d at 353. In determining whether such a distinction exists, we are not limited to the letter of the company policy (if any) underlying the disciplinary action against the discrimination claimant. This case illuminates several reasons why an employer might distinguish between a supervisor and a nonsupervisor who have embarked on a romantic relationship and why the employer might choose to punish the supervisor more harshly. For example, in his deposition, Telle expressed fears that Koski's actions could expose the company to lawsuits and explained that Koski's conduct threatened the morale of those employees under his supervision.

{¶ 18} Koski's position of authority within the company created a meaningful distinction between himself and Talpas and explains Willowwood's different

treatment of the two. Therefore, Koski and Talpas were not similarly situated in all relevant respects. Because Koski failed to establish this fourth prong of his prima facie case of discrimination, the trial court properly granted Willowwood's motion for a directed verdict. Appellant's assignment of error is overruled.

### Appellee's Assignment of Error

The trial court erred in failing to sustain Willowwood's motion for summary judgment on appellant's gender discrimination claim. (See, journal entry denying summary judgment filed 9/24/02.)

{¶ 19} In its assignment of error, raised pursuant to App.R. 3(C)(2), Willowwood maintains that the trial court's judgment may be affirmed on the alternative ground that the trial court erred by overruling its motion for summary judgment. Given our disposition of Koski's assignment of error, Willowwood's assignment of error is rendered moot, and we decline to address it. See App.R. 12(A)(1)(c).

### III

{¶ 20} Appellant's assignment of error is overruled. Appellee's assignment of error is rendered moot, and we decline to address it. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR, P.J., and SLABY, J., concur.