[Cite as *Morgan v. Consun Food Industies, Inc.*, 2024-Ohio-2300.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JOYCE MORGAN

     Appellee/Cross-Appellant

v.

CONSUN FOOD INDUSTRIES, INC.

     Appellant/Cross-Appellee

C.A. Nos.    23CA012020
               23CA012021

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CV194912

DECISION AND JOURNAL ENTRY

Dated: June 17, 2024

---

SUTTON, Judge.

**{¶1}** Defendant-Appellant Consun Food Industries, Inc. appeals from the judgment of the Lorain County Court of Common Pleas entering a jury verdict against it and awarding compensatory and punitive damages as well as attorney fees to Plaintiff-Appellee Joyce Morgan. Ms. Morgan cross-appeals from the judgment of the Lorain County Court of Common Pleas awarding attorney fees but denying prejudgment interest on the jury verdict. For the following reasons, this Court affirms the judgment of the trial court.

I.

**{¶2}** On April 2, 2018, Ms. Morgan filed a complaint against Consun alleging causes of action for gender discrimination in violation of R.C. 4112.02(A) and R.C. 4112.99; hostile work environment in violation of R.C. 4112.02(A) and R.C. 4112.99; constructive discharge; and negligent hiring and retention/supervision of an employee.

{¶3}    Ms. Morgan's complaint stemmed from her tenure as an employee of Consun at a Convenient Food Mart store in Elyria, Ohio.  Ms. Morgan began working for Consun in September of 2011.  During her employment at the store, Ms. Morgan was subjected to sustained and prolonged harassment by one of her co-workers, Todd Wise.

{¶4}    Ms. Morgan and Mr. Wise had the same supervisor at the store, Richard Turchek. Ms. Morgan complained about Mr. Wise's behavior to both her shift leader and the store manager. When no action was taken, she attempted to contact the store manager's supervisor, an employee of the corporate office, about Mr. Wise's behavior.  Despite these repeated attempts to try and get someone to do something about Mr. Wise's behavior toward herself and others, Ms. Morgan resigned her position with the company in May of 2012.

{¶5}    Less than a month after her resignation, Ms. Morgan filed a charge of discrimination against Consun with the Equal Employment Opportunity Commission ("EEOC"). The EEOC subsequently found probable cause with respect to Ms. Morgan's claims and issued her a right to sue letter in 2014.

{¶6}    In 2014, Ms. Morgan filed an action against Mr. Wise and Consun.  Ms. Morgan later voluntarily dismissed Consun from the action in 2016, but refiled the same claims, along with a federal claim for employment discrimination in 2017.  In March of 2018, the federal court dismissed the federal claim and declined to exercise jurisdiction over the remaining state claims. Ms. Morgan then refiled the current action in the Lorain County Court of Common Pleas.

{¶7}    The case proceeded to a nine-day jury trial.  At trial, Ms. Morgan testified to the many ways in which Mr. Wise terrorized her, her co-workers, and customers of the convenience store.  Ms. Morgan testified that Mr. Wise's behavior tended to be directed at only other female employees and female customers.  Ms. Morgan testified Mr. Wise "was in awe of men and he

would not, I've never seen him or heard anybody tell of anything he ever said to men. He would be extremely polite [to men]. He would be like this whole different person when he was serving [a customer who was] a man, and he was very polite and behaved like he should be with everybody[.]"

{¶8} Additionally, Ms. Morgan testified to several incidents involving Mr. Wise where he engaged in harassing behavior toward her. During an incident in mid-February 2012, Ms. Morgan, a deli associate, was working in the deli section when a commotion at the front of the store caught her attention. She happened to look over at Mr. Wise, who was close to her. She testified Mr. Wise looked at her and said, "what the fuck are you looking at, you fucking bitch[.]" Ms. Morgan testified his "eyes were as black as coal" and looked "evil[.]' Ms. Morgan reported the encounter to her shift lead who told her "well, you know, that's [Mr. Wise], you'll have to talk to [Mr. Turchek] about that." Ms. Morgan said the incident left her so shaken that she called a friend to bring her some medication to help calm her nerves while she continued working at her job.

{¶9} The following month, in March, a second incident occurred where Ms. Morgan was serving a customer at the deli counter and Mr. Wise "came over from the chicken room, from [her] left, and he took his elbow, and he elbowed [her], [and] it was [with] enough force that [she] didn't stumble back but [she] was moved back, and [] was absolutely shocked." Later, that same evening, Ms. Morgan was waiting on a customer who wanted mashed potatoes, but the mashed potatoes were not finished cooking. After informing the customer that it took 20 minutes to steam the five pound bag of mashed potatoes, Mr. Wise "went over to the steamer and got the five pound bag of steaming hot potatoes out and came back [to Ms. Morgan while she] was still holding on to the [customer's] food, [and Mr. Wise] tossed, threw the bag of potatoes at [her.]" The bag of steaming

hot mashed potatoes landed on Ms. Morgan's hands, causing the customer's food to spill everywhere, and leaving Ms. Morgan with burns on her hands.

{¶10} Ms. Morgan testified she tried to speak with the store manager about the incident, and Mr. Turchek told her, "I don't have time now." At that time, Ms. Morgan asked not to be scheduled at the same time as Mr. Wise, but Mr. Turchek told her that would not be possible.

{¶11} After speaking with Mr. Turchek about the March 2012 incident, Ms. Morgan observed no positive changes in Mr. Wise's behavior toward her. She testified Mr. Wise then began following her around at work, shuffling behind her everywhere she went. Mr. Wise would mockingly tell her "[o]h, good job" every time she did anything at work. Ms. Morgan testified Mr. Wise followed her so closely she could "smell him[.]"

{¶12} On the evening of April 19, 2012, another incident occurred at work. Late in the evening, three employees, Ms. Morgan, Mr. Wise, and shift leader Jazzy Jefferson, were left in the store and were preparing to close the store for the evening. Ms. Morgan was cleaning her area when she saw Mr. Wise leaving for the night. Ms. Morgan testified that seeing him leave gave her a sense of "relief." After she saw Mr. Wise leave, she "finished what [she] was doing and went back behind the counter, and there on [her] table in the box of gloves that [she] use[d] specifically for [herself], was a large knife stabbed into the box." Ms. Morgan testified she found this terrifying, and the knife had a blade that was between six to eight inches long. Ms. Morgan reported the incident to her shift leader who "didn't take it quite as strongly" as Ms. Morgan. Ms. Morgan was so terrified she called the police who came to the store and filed a report about the incident.

{¶13} The next day at work, Mr. Turchek told Ms. Morgan he needed to speak with her in the back of the store. When they met, Mr. Turchek informed Ms. Morgan that some hot food had been left overnight in the hot food case, instead of being stored in the freezer. Mr. Turchek

had reviewed the security camera footage and determined it was Ms. Morgan who had left the food in the hot food case. Because there was the loss of product involved, Mr. Turchek told Ms. Morgan that he needed to "write her up" for it. Mr. Turchek informed Ms. Morgan that she would be on a "[behavioral] plan" so she would not do it again. There was no mention of the knife incident or the police being called to the store the previous evening. Ms. Morgan testified she "walked away dumbfounded" from the meeting with Mr. Turchek. Ms. Morgan stated that because Mr. Turchek would have had to look at the store's surveillance camera footage to determine who left the food in the hot food case, the same footage would have shown who stabbed the knife into the box. Ms. Morgan testified "since [Mr. Turchek] called me in that morning I believed one hundred percent he knew about [the knife incident] because * * * you know, writing me up for leaving a little bit of chicken in the case, did he look at the film [] to see that it was me that did that. And if he looked at the film, he certainly saw everything[.]"

{¶14} About a month later, on May 28, 2012, Ms. Morgan arrived at work. Mr. Wise had continued shuffling behind her and following her around while she worked. Ms. Morgan stated she, "just couldn't do it anymore" and resigned from her employment at Consun without a subsequent job lined up.

{¶15} In addition to her own testimony, Ms. Morgan presented the testimony of two co-workers, Noreen Green and Brittany King, who both provided testimony consistent with Ms. Morgan's testimony regarding Mr. Wise's behavior and corroborated Ms. Morgan's account of the offensive conduct and comments made by Mr. Wise. Ms. King and Ms. Green testified Mr. Wise engaged in the same crude conduct with other female employees and female customers. They also testified that the store manager, Mr. Turchek, found Mr. Wise's behavior funny and often laughed at it instead of taking corrective action. Ms. Morgan also provided the testimony of an

expert witness, Timothy A. Dimoff, who testified to the negligence of Mr. Turchek in his handling of Ms. Morgan's complaints.

{¶16} Consun did not present any additional witnesses or evidence as part of its case-in-chief. The only witness Consun presented was Mr. Turchek, whom Ms. Morgan also called as part of her case-in-chief.

{¶17} After the close of Ms. Morgan's case, Consun moved for a directed verdict. The trial court denied the motion with respect to the gender discrimination and hostile work environment claims, granted it with respect to the constructive discharge claim, and denied it with respect to the negligent retention and supervision claim. After the close of its case, without presenting any witnesses, Consun again renewed its motion for a directed verdict. The trial court denied the motion and the case proceeded to the jury.

{¶18} The jury returned a verdict in favor of Ms. Morgan and against Consun. The jury awarded Ms. Morgan $2,888.85 in back pay, $62,500.00 for suffering and emotional distress, and an additional $62,500.00 in other non-monetary compensatory damages for a total of $127,888.85 in compensatory damages. The jury also awarded Ms. Morgan $25,000.00 in punitive damages.

{¶19} Both parties engaged in post-judgment litigation. Consun filed a motion for judgment notwithstanding the verdict, which the trial court denied. Ms. Morgan filed a motion for prejudgment interest, costs, and attorney fees which the trial court granted in part and denied in part. The trial court denied an award of prejudgment interest, finding that Consun did not fail to make a good faith effort in settling the case. The trial court also denied the full amount of attorney fees requested by Ms. Morgan's counsel in the amount of $288,698.85. Instead, the trial court awarded Ms. Morgan attorney fees in the amount of $68,799.71, which is 45 percent of the amount

awarded by the jury and the percentage amount provided for in the contingency agreement that Ms. Morgan signed with her counsel.

**{¶20}** Consun timely appealed, assigning six errors for this Court's review. Ms. Morgan also filed a cross-appeal, assigning two errors for this Court's review. To aid our review, this Court has reordered the assigned errors.

II.

### ASSIGNMENT OF ERROR V

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S MOTION TO DISMISS THE COMPLAINT.**

**{¶21}** In its fifth assignment of error, Consun argues the trial court erred when it denied Consun's motion to dismiss the complaint because Ms. Morgan's claims were outside the statute of limitations. For the following reasons, we disagree.

Standard of Review – Motion to Dismiss Complaint

**{¶22}** "This Court's standard of review for a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is de novo." *Gasper v. Bank of America, N.A.*, 9th Dist. Medina No. 17CA0091-M, 2019-Ohio-1150, ¶ 27, citing *22 Exchange, L.L.C. v. Exchange St. Assocs., L.L.C.*, 9th Dist. Summit No. 27472, 2015-Ohio-1719, ¶ 18. "De novo review encompasses an independent examination of the trial court's decision without deference to the underlying decision." *Id.*, citing *Ohio Receivables, L.L.C. v. Landaw*, 9th Dist. Wayne No. 09CA0053, 2010-Ohio-1804, ¶ 6, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

Statute of Limitations

**{¶23}** We must first determine the applicable statute of limitations for Ms. Morgan's claims. Here, it is undisputed on appeal that the gender discrimination and hostile work environment claims are subject to a six-year statute of limitations. Ms. Morgan's claims for gender

discrimination and hostile work environment were brought pursuant to Revised Code Chapter 4112, and the Supreme Court of Ohio has held that claims brought pursuant to Chapter 4112 have a six-year statute of limitations. *See Cosgrove v. Williamsburg of Cincinnati Mgmt. Co., Inc.,* 70 Ohio St.3d 281 (1994); *Jackson v. Internatl. Fiber*, 2d Dist. Champaign No. 2005-Ohio-CA-38, 2006-Ohio-5799, ¶ 20; *Warith v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 107717, 2019-Ohio-3761, ¶ 18.

{¶24} The parties, however, disagree as to the statute of limitations for Ms. Morgan's negligent retention and supervision claim. Ms. Morgan argues the claim enjoys a four-year statute of limitations, while Consun argues that the claim was subject to a two-year statute of limitations.

{¶25} The Supreme Court of Ohio has not articulated a specific statute of limitations for a negligent supervision and retention claim, nor is there a statute that delineates a specific statute of limitations for such a claim. The Supreme Court of Ohio, however, has provided guidance for determining the appliable statute of limitations. When determining the applicable statute of limitations, "courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). Applying the holding of *Hambleton* in *Love v. Port Clinton*, 37 Ohio St.3d 98 (1988), syllabus, the Supreme Court of Ohio held that "[w]here the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence." *See also Cleavenger v. B.O.*, 9th Dist. Summit No. 29875, 2022-Ohio-454; *Frankowski v. Mahl*, 9th Dist. Medina No. 2023CA0038-M, 2024-Ohio-1202.

{¶26} In *Evans v. Akron General Medical Center*, 9th Dist. Summit No. 28340, 2018-Ohio-3031, ¶ 9, it was undisputed that a two-year statute of limitations applied to a negligent

retention and supervision claim because the plaintiff in that case alleged she suffered psychological, emotional, and physical injuries, and emotional distress. Therefore, the applicable statute of limitations was governed by the statute for bodily injury, R.C. 2305.10.

{¶27} However, in this case, because the conduct giving rise to the negligent retention and supervision claim is distinguishable from *Evans*, *supra*, the same two-year statute of limitations is not applicable. Here, the "actual nature and subject matter" of the case are found in the gender discrimination and the hostile work environment claims alleged by Ms. Morgan. *Hambleton* at 183. "The grounds for bringing the action are the determinative factors [governing the applicable statute of limitations.]" *Id.* The "essential character" of the alleged tort of negligent retention and supervision is the employer's failure to take action with respect to Mr. Wise's employment at the store when Ms. Morgan complained about Mr. Wise's behavior toward her. *See Love* at syllabus. Therefore, the applicable statute of limitations for the negligent retention and supervision claim in this case is six years, which is the statute of limitations for the gender discrimination and hostile work environment claims.

{¶28} As a result, when Ms. Morgan refiled her lawsuit against Consun in Lorain County Court of Comon Pleas in 2017, the statute of limitations had not expired, and she did not utilize Ohio's savings statute, R.C. 2305.19, to file those claims. Because the statute of limitations did not expire until 2018, the trial court did not err when it denied Consun's motion to dismiss because the statute of limitations for Ms. Morgan's claims had not expired.

{¶29} Accordingly, Consun's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S CIV.R. 50(A) MOTION FOR DIRECTED VERDICT ON PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENT RETENTION/SUPERVISION.**

{¶30} In its first assignment of error, Consun argues the trial court erred in denying its motion for a directed verdict on Ms. Morgan's cause of action for negligent retention and supervision because the statute of limitations on that claim had expired. This is the same argument that Consun made in its fifth assignment of error. Given this Court's resolution of the fifth assignment of error, Consun's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S CIV.R. 50(A) MOTION FOR DIRECTED VERDICT ON PLAINTIFF'S CAUSE OF ACTION FOR GENDER DISCRIMINATION.**

{¶31} In its second assignment of error, Consun argues the trial court erred in denying its motion for a directed verdict on the grounds that Ms. Morgan failed to establish she was treated less favorably than a similarly-situated employee outside of her protected class pursuant to the framework for a gender discrimination claim set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

{¶32} In response, Ms. Morgan argues the trial court did not err, and the evidence presented at trial showed that Mr. Turchek, the direct supervisor for both Ms. Morgan and Ms. Wise, "did not take [Ms. Morgan's] complaint seriously, failed to investigate, failed to interview any employees and failed to implement prompt and immediate corrective action to stop any further harassment by Mr. Wise, who was similarly situated and treated much more favorably."

Standard of Review – Motion for a Directed Verdict

{¶33} Civ.R. 50(A)(4) provides as follows:

[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is

adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

"A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." *Ulrich v. Mercedes-Benz USA, L.L.C.*, 9th Dist. Summit No. 24740, 2010-Ohio-348, ¶ 6, quoting *Kane v. O'Day*, 9th Dist. Summit No. 23225, 2007-Ohio-702, ¶ 18. "The motion 'does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.'" *Id.*, quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co*., 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 4, quoting *O'Day v. Webb*, 29 Ohio St.2d 215 (1972), paragraph three of the syllabus. "Accordingly, we review [a] * * * ruling on a motion for a directed verdict de novo." *Id.*, quoting *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 9th Dist. Medina No. 07CA0117-M, 2009-Ohio-2612, ¶ 6.

Gender Discrimination

{¶34} It is an unlawful discriminatory practice for any employer to "discharge without just cause, to refuse to hire, or otherwise discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment[,]" on the basis of sex. R.C. 4112.02(A). "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. 4112." *Stipkala v. Bank One, N.A*., 9th Dist. Summit No. 21986, 2005-Ohio-16, ¶ 10. A plaintiff may demonstrate the existence of discriminatory practices with direct or indirect evidence. *Id*. at ¶ 11.

{¶35} "Ohio courts analyze discrimination claims which are based on indirect evidence under the framework provided by *McDonnell Douglas Corp. v. Green,* [411 U.S. 792 (1973).]" *Id.* at ¶ 14. Under that framework, "[t]o establish a prima facie case of discrimination, a plaintiff must

show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person." *Atkinson v. Akron Bd. of Edn.*, 9th Dist. Summit No. 22805, 2006-Ohio-1032, ¶ 28. A plaintiff may also satisfy the fourth prong by presenting evidence that he was "treated differently than similarly situated non-protected employees." *Jones v. MTD Consumer Group., Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-Ohio-1878, ¶ 27.

Similarly Situated Employee

{¶36} Consun argues Ms. Morgan failed to establish a prima facie case because she failed to produce evidence that she was treated less favorably than a similarly situated non-protected employee. "[T]o be deemed 'similarly-situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Putney v. Contract Bldg. Components*, 3d Dist. Union No. 14-09-21, 2009-Ohio-6718, ¶ 31, quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998), quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). Further, "we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects." *Koski v. Willowwood Care Ctr. of Brunswick*, Inc., 9th Dist. Medina No. 03CA0083-M, 2004-Ohio-2668, ¶ 15, quoting *Ercegovich* at 353. In practical terms, two employees are not similarly-situated in all relevant respects if there is a meaningful distinction between them which explains their employer's differential treatment of them." *Vogel v. N.E. Ohio Media Group, LLC*, 9th Dist. Medina No. 21CA0051-M, 2023-Ohio-176, ¶ 12, quoting *Jones v. MTD Consumer Group, Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-Ohio-1878, ¶ 29, quoting

*Lindsay v. Children's Hosp. Med. Ctr. of Akron*, 9th Dist. Summit No. 24114, 2009-Ohio-1216, ¶ 38.

{¶37} Here, a careful review of the record and evidence presented at trial shows that Ms. Morgan presented sufficient evidence to establish she was treated differently from Todd Wise, a similarly situated non-protected employee, as well as another male employee of the deli who also complained of Mr. Wise's behavior. Both Ms. Morgan and Mr. Wise were hired to work as deli associates at the store. Mr. Turchek was the direct supervisor for both Ms. Morgan and Mr. Wise. After calling the police regarding Mr. Wise's behavior with respect to the knife incident, Mr. Turchek disciplined only Ms. Morgan for leaving hot food in the hot food case overnight. As Ms. Morgan testified at trial, if Mr. Turchek had reviewed the footage, Mr. Turchek would have seen who stabbed the knife into her glove box. In response, Mr. Wise received no adverse employment action against him for the knife incident.

{¶38} Additionally, Mark Duncan, an assistant store manager, testified that after another male deli employee complained about Mr. Wise's behavior following a verbal altercation with Mr. Wise, Mr. Turchek took action on that male employee's complaint by addressing the incident with Mr. Wise. However, when Ms. Morgan, a female deli employee complained about Mr. Wise's behavior, Mr. Turchek failed to take any action. Mr. Turchek stated he spoke to Mr. Wise and Mr. Wise said it was not true, so he took no further action. Mr. Turchek failed to take Ms. Morgan's complaint seriously, failed to fully investigate her complaint, failed to interview any employees about Mr. Wise's behavior, and failed to implement any corrective action to mitigate further harassment by Mr. Wise.

{¶39} Mr. Wise, as a male deli employee, received no adverse employment action as a result of his known harassing conduct, while Ms. Morgan received discipline for leaving the hot

food out on the night of the knife incident. As such, Mr. Wise, a similarly situated non-protected employee, was treated more favorably than Ms. Morgan. Additionally, the male deli employee, another similarly situated non-protected employee who complained about Mr. Wise's behavior, had his complaint addressed by management with Mr. Wise, something Ms. Morgan's complaint did not receive. Therefore, Ms. Morgan presented sufficient evidence to sustain judgment in her favor on her claim for gender discrimination. As such, the trial court did not err in denying Consun's motion for a directed verdict.

{¶40} Accordingly, Consun's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S CIV.R. 50(A) MOTION FOR DIRECTED VERDICT ON PLAINTIFF'S CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT BASED ON HER CO-WORKER'S SEXUAL HARRASSMENT.**

{¶41} In its third assignment of error, Consun argues the trial court erred in denying its motion for a directed verdict because: 1) Ms. Morgan failed to establish that she was subject to unwelcome sexual harassment; 2) Ms. Morgan failed to establish that the harassment was based on sex; 3) Ms. Morgan failed to establish that the harassing conduct was sufficiently severe or pervasive to affect her employment; and 4) Ms. Morgan failed to establish that Consun's response to her claims of harassment were indifferent or unreasonable.

{¶42} As stated above, we review a trial court's ruling on a motion for a directed verdict de novo. *Ulrich*, 2010-Ohio-348, at ¶ 6.

Hostile Work Environment

{¶43} "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredients Specialties, Inc*., 89 Ohio St.3d 169, 176-177 (2000). "[H]arassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex." *Id.* at 180. On the other hand, "harassment is not automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id*.

{¶44} A review of the record shows that Ms. Morgan established through her own testimony that she was subject to unwelcome sexual harassment by Mr. Wise. Not only did Ms. Morgan testify that Mr. Wise's behavior was unwelcomed, she also demonstrated it was unwelcomed by avoiding Mr. Wise, complaining to her co-workers, complaining to Mr. Turchek, contacting Ms. Khaleed at the corporate office, and calling the police.

{¶45} Consun argues that Ms. Morgan failed to demonstrate the harassment was based upon sex. However, a review of the record shows that Mr. Wise made comments about "breasts," "cow udder tits," and aborting babies, which were all comments directed toward women and not men. Additionally, Mr. Wise only made these crude comments to women co-workers and customers who were women. For example, Ms. Morgan testified that one elderly woman asked

her where the restroom was. Mr. Wise overheard the exchange and told the elderly woman she could "piss outside by the dumpsters." Ms. King testified that Mr. Wise "would say things like women are meant to be in the back and guys are in the front, and women are only good for sex[.]" She also testified Mr. Wise "would always talk about our breasts, or our butts. Anything sexual, he said[,]" and added the comments were "[t]hings that typically you shouldn't say to women * * * [but were] laughed at by [assistant store manager] Mark and [store manager] Rich." Ms. Green added that "the guys were allowed to say whatever they wanted. * * * There were no consequences for derogatory statements with any of my managers to my knowledge." Therefore, the record shows that Ms. Morgan established that the harassment was gender based.

{¶46} Consun also argues that Ms. Morgan failed to establish the harassing conduct was sufficiently severe or pervasive to affect her employment. The record, however, reflects that Ms. Morgan did establish that Mr. Wise's conduct was sufficiently severe or pervasive enough to affect her employment. Ms. Morgan testified to the toll that Mr. Wise's daily harassment and abuse took on her and how Consun's management's failure to take any action to stop or acknowledge her complaint made the situation worse for her. Ms. Morgan testified to three separate incidents where Mr. Wise's harassing conduct was directed at specifically her, the incidents were reported to her shift lead or management, and no further action was taken by store management. Ms. Morgan testified to the incident where Mr. Wise called her a "fucking bitch" and she was "shaking" and "frightened[.]" After the incident, Ms. Morgan's friend brought her medication to the store to help calm her down. Ms. Morgan also testified Mr. Wise threw a five-pound bag of steaming hot mashed potatoes at her, causing burns to her skin. Additionally, Ms. Morgan testified to finding the long knife stabbed into her box of gloves during an evening where Mr. Wise was only one of two other employees left in the store.

{¶47} Consun also argues Ms. Morgan failed to establish that Consun, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Consun argues that because Ms. Morgan only made one complaint to her supervisor, that the one complaint was not sufficient enough. Ms. Morgan testified that no one took any action in response to her complaint. Ms. Morgan testified that after the day Mr. Wise threw a steaming hot bag of mashed potatoes at her, she went to her supervisor, Mr. Turchek, to speak with him about Mr. Wise, and Mr. Turchek's response was "[w]ell, I don't have time now." During that same conversation, Ms. Morgan requested to be placed on a different shift than Mr. Wise, and Mr. Turchek stated it would be impossible to schedule Ms. Morgan and Mr. Wise on different shifts. Additionally, Mr. Turchek testified that he never advised Mr. Wise to curtail his interaction with Ms. Morgan, or have Mr. Wise acknowledge that he understood Consun's anti-harassment policy. The record further indicates that despite Consun having knowledge of Mr. Wise's behavior, his employment was not terminated with the company and he did not face any adverse employment actions during the duration of Ms. Morgan's employment.

{¶48} Therefore, on this record, we cannot say Ms. Morgan failed to present sufficient evidence to sustain her claim for a hostile work environment. Accordingly, the trial court did not err in denying Consun's motion for a directed verdict with respect to the hostile work environment claim.

{¶49} Accordingly, Consun's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S FEBRUARY 2, 2022 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON PLAINTIFF'S CAUSES OF ACTION FOR 1) GENDER DISCRIMINATION; 2) HOSTILE WORK ENVIRONMENT BASED ON GENDER; AND 3) NEGLIGENT RETENTION/SUPERVISION.**

{¶50} In its fourth assignment of error, Consun argues the trial court erred in denying its judgment notwithstanding the verdict ("JNOV"). For the following reasons, we disagree.

{¶51} After a court enters judgment on a jury's verdict, a party may file a motion for JNOV to have the judgment set aside on grounds other than weight of the evidence or credibility of witnesses. *See* Civ.R. 50(B); *see also McMichael v. Akron Gen. Med. Ctr*., 9th Dist. Summit No. 28333, 2017-Ohio-7594, ¶ 10, citing *Williams v. Spitzer Auto World, Inc*., 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 9. "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non[-]moving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *McMichael* at ¶ 10, citing *Williams* at ¶ 9. "If reasonable minds could reach different conclusions, the motion must be denied." *Id*., quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127, 26231, 2013-Ohio-2431, ¶ 12. "The test to be applied by the trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict." *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976).

{¶52} As indicated above, Consun challenges the trial court's denial of its motion for a directed verdict in its' first, second, and third assignments of error. Because the analysis is the same for both a motion for a directed verdict and a motion for JNOV, we decline to further address this argument as it is the same argument made and resolved by this Court in Consun's first, second, and third assignments of error.

{¶53} Accordingly, Consun's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR VI**

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING CONSUN'S OBJECTIONS TO TESTIMONY OF PLAINTIFF'S EXPERT AND ALLOWANCE OF TESTIMONY BY PLAINTIFF'S EXPERT IN CONTRAVENTION OF EVID.R. 702, INCLUDING BY GIVING LEGAL CONCLUSIONS, INVADING THE PROVINCE OF THE JURY, AND OPINING ON MATTERS THAT WERE NOT BEYOND THE KNOWLEDGE OR EXPERIENCE POSSESSED BY LAY PERSONS.**

**{¶54}** In its sixth assignment of error, Consun argues the trial court erred by allowing Ms. Morgan's expert witness to testify because the admissibility of the expert's testimony was in contravention of Evid.R. 702. For the following reasons, we disagree.

Standard of Review

**{¶55}** "The determination of the admissibility of expert testimony is within the discretion of the trial court." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 9. "'Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of [the reviewing court] to substitute its judgment for that of the trial court." *Id.*, citing *Calderon v. Sharkey*, 70 Ohio St.2d 218, 222 (1982).

Admissibility of Expert Testimony

**{¶56}** Evid.R. 702 states as follows:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶57}** Here, Consun argues that whether or not sexual harassment occurred, or whether Consun's response was indifferent, was not so technical as to require expert testimony to assist the jury. However, Evid.R. 704 states "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." "[I]ts admission depends upon how helpful the opinion is to the jury and whether the issue is one that might be beyond an ordinary juror's understanding." *State v. Flowers*, 9th Dist. Lorain No. 12CA010295, 2014-Ohio-3087, ¶ 6, citing *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 58, citing *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraphs one and two of the syllabus (holding that the existence or nonexistence of an ultimate fact is generally the province of the jury, but that an expert may express an opinion on the same if the issue is one "beyond the experience, knowledge or comprehension of the jury"). The Staff Note to Evid.R. 704 states:

> The rule does not serve to make opinion evidence on an ultimate issue admissible; it merely provides that opinion evidence on an ultimate issue is not excludable per se. The rule must be read in conjunction with Rule 701 and Rule 702, each of which requires that opinion testimony be helpful to, or assist, the trier of the fact in the determination of a factual issue. Opinion testimony on an ultimate issue is admissible if it assists the trier of the fact, otherwise it is not admissible. The competency of the trier of the fact to resolve the factual issue determines whether or not the opinion testimony is of assistance.

**{¶58}** Here, Mr. Dimoff's testimony concerned what a company should do in response to a workplace harassment complaint, whether or not specific actions constituted a hostile work

environment, and whether or not a company had a duty to train its management on sexual harassment. His testimony was helpful to the jury in its determination of the ultimate factual issue in this matter. Therefore, we cannot say the trial court abused its discretion in admitting Mr. Dimoff's expert testimony.

**{¶59}** Accordingly, Consun's fifth assignment of error is overruled.

## CROSS-ASSIGNMENT OF ERROR I

**THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD THE FULL ATTORNEY FEES REQUESTED BY CROSS-APPELLANT.**

**{¶60}** In her first cross-assignment of error, Ms. Morgan argues the trial court erred in awarding only $68,799.71 in attorney fees. For the following reasons, we disagree.

### Award of Attorney Fees

**{¶61}** "[I]n Ohio, it is an established principle of law that if punitive damages are awarded, the aggrieved party may also recover reasonable attorney fees." *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit No. 26127, 2013-Ohio-2431, ¶ 62, citing *LaFarciola v. Elbert*, 9th Dist. Lorain No. 08CA009471, 2009-Ohio-4615, ¶ 10. "A trial court's determination in regards to an award of attorney fees will not be disturbed on appeal absent an abuse of discretion." *Id.*, quoting *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, ¶ 33, quoting *Crow v. Fred Martin Motor Co.*, 9th Dist. Summit No. 21128, 2003-Ohio-1293, ¶ 38. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing for an abuse of discretion, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶62} "The reasonableness of attorney[ ] fees is determined with respect to the factors set forth in Rule 1.5(a) of the Ohio Rules of Professional Conduct * * *." *Cambridge Co., Ltd. v. Telsat, Inc.*, 9th Dist. Summit No. 23935, 2008-Ohio-1056, ¶ 19. The rule provides that: "[t]he factors to be considered in determining the reasonableness of a fee include* * * (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and] (8) whether the fee is fixed or contingent." *Id.*, quoting Prof.Cond.R. 1.5(a)(1)-(8). "[The] trial court maintains discretion to make the determination as to what [attorney] fee award is reasonable in light of all the facts and circumstances of the case." *Mauger v. Inner Circle Condominium Owners Assn.*, 9th Dist. Medina No. 10CA0046-M, 2011-Ohio-1533, ¶ 26, quoting *Jerels v. Begue*, 9th Dist. Summit No. 24700, 2010-Ohio-1964, ¶ 13.

{¶63} The trial court, in granting Ms. Morgan's request for attorney fees but awarding an amount less than Ms. Morgan requested, made the following findings:

> This court ultimately has discretion in its award of attorney fees. In awarding attorney fees to a prevailing plaintiff in an employment discrimination case, the court's determination of what is reasonable is within its discretion. * * * In general, the "lodestar" analysis is an appropriate starting place. Although one might argue that the testimony of [Ms. Morgan's] counsel as to these factors was self-serving and not objective, the figures for rates of counsel, associates, paralegals, etc. seemed appropriate. That the total of the fees under [Ms. Morgan]'s calculation exceeds [Consun]'s hourly fees, the court notes that the party with the burden of proof often has more work to do in order to present and prosecute the case. Indeed, defense counsel testified that his hourly rate and that of his associate was right in

line with the rates that plaintiff's counsel applied to make their calculation. The plaintiff's attorneys were also willing to delegate tasks to employees who worked at a lesser hourly rate.

In looking at the "lodestar" factors under Rule 1.5(a) of the Ohio Rules of Professional Conduct, the court notes that there was certainly evidence supporting a number of those factors that would apply to the reasonableness of [Ms. Morgan]'s conclusions. The court can see that such factors of (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly[;] (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (7) the ability of the lawyers performing the services all lend support to the total hourly fee claims of $284,698.86. Although reference is made in the fee agreement contract that accepting employment under factor (2) will preclude other employment by the lawyer, it is not clear to the court that the attorney's case load was such, that accepting this case "will preclude other employment by the lawyer." Of course, at a certain point, a lawyer or law firm cannot successfully or competently handle another case. However, there was no persuasive evidence that [Ms. Morgan]'s counsel gave up other good cases because they were representing Ms. Morgan or that the effect of such responsibilities to limit their case intakes was "apparent to the client [Ms. Morgan]" as stated by factor (2). Factor (5)[,] the nature and length of the professional relationship with the client[,] is not particularly helpful here for the reason that in 2016, the plaintiff and counsel voluntarily dismissed the case on the eve of trial. Apparently, plaintiff's counsel made the decision to file a case in federal court which was never explained in the hearing. So eventually a few years later, the case was refiled in Lorain County and was again set for trial in 2019 when Covid[-]19 restrictions shuttered the courtroom for trial purposes for a period of time that neither party could have anticipated. However, had the plaintiff proceeded with trial in 2016, could not much of the increased time and attorney fees have been avoided? No compelling or persuasive evidence was presented to explain why [five] years of litigation had to be added to a case that could have been tried in 2016 rather than the summer of 2021. Plaintiff's argument that they had to dismiss the case against Consun in order to get default judgment against Todd Wise and simplify the case is not convincing.

This brings us to the lodestar factor (8)[,] "whether the fee is fixed or contingent."

In this case, the plaintiff's counsel had a contingency fee agreement to accept the responsibility of the case which is typical. Here, the contract provided for a healthy 45% fee if the case went to trial along with reimbursement of expenses. Certainly, plaintiff's counsel accepted the responsibility knowing that their fee would likely be based upon this amount. In light of the various factors that resulted in the period of time to get this case to trial, which to a large extent was caused by the plaintiff's own decision to dismiss the case in 2016, the court finds that the appropriate way to calculate reasonable attorney fees is to follow the contract that was signed by the plaintiff with her counsel. For the same reasons, as well as the factual issues over

the value of the case, this court declines to adopt the plaintiff's request for "delay enhancement."

Accordingly, the court awards reasonable attorney fees in the amount of $68,799.71 (calculated as 45% of the total award of $127,888.25 + $25,000.)

{¶64} Here, the record indicates that the trial court clearly considered the factors outlined in Prof.Cond.R. 1.5(a). As the Ohio Supreme Court held in *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, ¶ 20, "[a] trial court has discretion to modify the presumptive calculation of an attorney-fee award-the reasonable hourly rate multiplied by the number of hours worked-but any modification must be accompanied by a rationale justifying the modification." The trial court's judgment entry adequately explained that it was modifying the lodestar because Ms. Morgan's counsel had agreed to a 45 percent contingency fee agreement. No further explanation or calculation was required. *See Calabrese Law Firm v. Christie*, 8th Dist. Cuyahoga No. 112736, 2024-Ohio-579, ¶ 74. The trial court could properly consider the contingency fee agreement in modifying the lodestar because the lodestar (hourly rate multiplied by the number of hours worked) would not take this factor into account. *Id.*, citing *Phoenix* at ¶ 19.

{¶65} Therefore, we cannot say the trial court abused its discretion in its award of attorney fees.

{¶66} Accordingly, Ms. Morgan's first cross-assignment of error is overruled.

### CROSS ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD PREJUDGMENT INTEREST TO CROSS-APPELLANT.**

{¶67} In her second cross-assignment of error, Ms. Morgan argues the trial court erred in denying her request for an award of prejudgment interest. For the following reasons, we disagree.

Award of Prejudgment Interest

{¶68} R.C. 1343.03(C)(1)(b) governs the award of prejudgment interest in personal injury lawsuits:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:

> (b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered[.]

In *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658 (1994), the Ohio Supreme Court stated the four requirements outlined in the statute:

> The statute sets forth certain requirements. First, a party seeking interest must petition the court. The decision is one for the court—not any longer a jury. The motion must be filed after judgment and in no event later than fourteen days after entry of judgment. [*Cotterman v. Cleveland Elec. Illum. Co.*, 34 Ohio St.3d 48, (1987), paragraph one of the syllabus.] Second, the trial court must hold a hearing on the motion. Third, to award prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle and, fourth, the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. R.C. 1343.03(C).

The *Moskovitz* Court also explained that "if a party meets the four requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary." *Id*. "The crux of the statute is 'good faith effort' and the ultimate decision whether to award prejudgment interest is reposed in the trial judge[,]" and "the standard of review on appeal is abuse of discretion." *Id*.

{¶69} "A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and

potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith*, 25 Ohio St.3d 157, 159 (1986), paragraph one of the syllabus.

{¶70} Here, the record indicates Ms. Morgan made an initial demand to Consun of $250,000. Consun's first settlement offer was $5,000 after the EEOC found probable cause for the sexual harassment claim. Consun later increased the amount to $7,500 after the EEOC found probable cause as to constructive discharge, and finally offered $15,000 after Ms. Morgan commenced her lawsuit. Throughout the course of the litigation, Consun never moved off their initial settlement offer until the first day of trial, when Consun offered Ms. Morgan $25,000 to settle her claims. Ms. Morgan argues the failure of Consun to move off the $15,000 settlement offer "which given the egregious facts and circumstances in this case, was a ridiculous counter-offer and not made in good faith."

{¶71} However, the trial court did not see the facts of the case in the same light as Ms. Morgan. In finding that Consun had made a good faith effort to settle the case, the trial court held:

> There were two narratives presented, each party believing their narrative to be correct. The jury agreed with [Ms. Morgan]'s version[,] Consun management failed to train their employees on how to investigate claims of workplace harassment and discrimination allowing Todd Wise's behavior to be tolerated at the expense of a woman such as Ms. Morgan.

> [Consun] painted a different picture with its evidence that supervisors were not made aware of the extent of Mr. Wise's behavior. Indeed, Consun management argues that the uncontroverted evidence showed that Ms. Morgan kept much of this information to herself and only revealed it to Consun management after she left Consun Foods. Consun argues that it had no knowledge of some of the most allegedly egregious behavior of Ms. Wise and with what information they did know, they took Ms. Morgan's complaint seriously enough. Consun's management basically argues that they kept the mentally challenged Todd Wise employed and

that Ms. Morgan seemed satisfied by management's efforts to scold Wise and let him know that if he should behave as alleged by Ms. Morgan, he would lose his job. Shortly after leaving Consun, Ms. Morgan actually did find new employment so that her lost wages claim was rather modest as confirmed by the award of $2,999.85 for back pay lost. When [Ms. Morgan] refused to turn over her medical records where it appeared she may have had some treatment for prescriptions for some emotional conditions before her difficulties with Mr. Wise, the court ruled that a claim for certain damages would not be permitted. The court finds that Consun's different view of the value of the case was based upon legitimate factual disputes and did not evidence a failure to act in good faith.

There were clearly issues of fact in dispute with witness credibility at play. Evidence of settlement negotiations at two different mediations indicated a desire by both parties to try and resolve the matter. The jury's verdict was nearly right in between the amounts sought and the amount offered. [Consun] claims it was willing to offer $25,000 at the mediation in 2019 but on the advice of the mediator did not make that offer while [Ms. Morgan] was fixed upon a six-figure amount. Testimony in the [prejudgment interest] hearing indicated support for both strategies of trying to settle the case for amounts well under eventually the jury awarded as well as reasons why [Ms. Morgan] refused to consider an offer that did not get into the six-figure range.

The court noted that Consun's attorney testified as to the mediator's opinion on the value of the case. Although the court initially overruled [Ms. Morgan]'s objection to this hearsay information, upon further reflection, this court decided not to consider what opinion the mediator may or may not have had on the value of the case. Otherwise, confidentiality of mediations could be undermined. However, this court can still consider the defendant's position at mediation to determine whether it acted in good faith to try and settle the case without reference to the mediator's supposed private comments to one of the parties.

The court reviewed the report of other verdicts/settlements in employment discrimination cases that [Ms. Morgan]'s counsel provided [Consun's] counsel. There was insufficient information in these brief summaries to establish compelling similarities with the instant case given the specific factual issues here as previously described.

Some cases simply have to be tried and the court finds that this was one of them. This was not a case where damages were fixed beyond the modest amount of back pay. Therefore, evaluating whether the offer or demand shows good faith or a lack of good faith is more difficult to assess.

Indeed, a jury question early on in the deliberation about whether the jury could award money to a charity instead of the [Ms. Morgan] at least supports the idea that there were legitimate differences of opinion on how the case should be evaluated. Ultimately, [Ms. Morgan]'s counsel arguments carried the day, but that does not

mean that [Consun] failed to make a good faith effort to settle the case. Although the jury eventually found punitive damages were appropriate along with reasonable attorney dees, that finding is very different as to whether the underlying issues of fact were so clear cut that [Consun]'s settlement position was a failure to exercise good faith.

The court does not find that under the facts and circumstances that [Consun] failed to make a good faith effort to settle this case. Prejudgment interest is denied.

{¶72} As such, we cannot say the trial court abused its discretion in finding that Consun made a good faith effort to settle the case. As Ms. Morgan indicated on appeal, Consun did make multiple settlement offers, and increased those offers as the case proceeded through the EEOC and as Ms. Morgan filed her lawsuit in court. Because Consun and Ms. Morgan differed in their opinions with respect to the value of the case, that does not indicate a lack of a good faith effort on Consun's part. Therefore, the trial court did not err in denying Ms. Morgan prejudgment interest.

{¶73} Accordingly, Ms. Morgan's second cross-assignment of error is overruled.

III.

{¶74} Consun's six assignments of error are overruled. Ms. Morgan's first and second cross-assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross Appellee.


BETTY SUTTON
FOR THE COURT


STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

FRANK CONSOLO, Attorney at Law, for Appellant/Cross-Appellee.

NATALIE F. GRUBB and MARK E. OWENS, Attorneys at Law, for Appellee/Cross-Appellant.