[Cite as *Salim v. Smith*, 2016-Ohio-2764.]

STATE OF OHIO            )                  IN THE COURT OF APPEALS
                          )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN      )

RYAN SALIM                        C.A. No.      15CA010790

      Appellant

      v.                            APPEAL FROM JUDGMENT
                                  ENTERED IN THE
RONALD SMITH, et al.          COURT OF COMMON PLEAS
                                  COUNTY OF LORAIN, OHIO
      Appellees              CASE No.     15CV185826

DECISION AND JOURNAL ENTRY

Dated: May 2, 2016

MOORE, Judge.

{¶1} Plaintiff, Ryan Salim, appeals from the judgment of the Lorain County Court of Common Pleas. We affirm in part, reverse in part, and remand this matter to the trial court for further proceedings consistent with this decision.

I.

{¶2} On March 4, 2015, Mr. Salim, an inmate at the Grafton Correctional Institution ("Grafton"), filed a complaint for "declaratory judgment" against the chaplain, warden, and deputy warden of special services employed by Grafton, as well as the Director, the previous religious services administrator, and the successor religious services administrator of the Ohio Department of Rehabilitation and Corrections ("ODRC"). In his complaint, Mr. Salim alleged that in 2013, upon his transfer to Grafton, he began frequenting the Grafton Chapel for religious services. In April of 2013, Mr. Salim was moved to the "A-2 Faith-Based Housing Unit" ("A2 Unit"). Toward the end of December of 2013, the chaplain at Grafton, Ronald Smith, required

Mr. Salim to enter into a "contract" ("A2 Contract") in order to remain in the A2 Unit, and Mr. Salim attached an unsigned copy of the purported contract to the complaint. Mr. Salim alleged that, after signing the A2 Contract, he began to notice that, although he was being held to the terms of the contract, Chaplain Smith was not abiding by the contract's terms. Thereafter, Mr. Salim commenced a state-provided grievance procedure. *See* R.C. 2969.26. After commencing this process, Mr. Salim maintained that Chaplain Smith commented to Mr. Salim's cellmate that prisoners making complaints about the Chaplain through grievances would be placed upon a list for transfer.

In his complaint, Mr. Salim set forth twelve counts. Each count commenced with an introduction as reproduced below.

> Count One: Breach of Contract: A declaratory judgment issue regarding defendants['] * * * contractual duties towards [Mr. Salim] was breached; and if so, whether such contract should be declared defunct.

> Count Two: Impossible Contract: A declaratory judgment issue regarding all the defendants deciding whether the A2 Contract is an impossible contract because there is no feasible way for either party to perform all of their duties under the contract.

> Count Three: Residential Duress: A declaratory judgment issue regarding all the defendants deciding whether the A2 Contract is void because it was signed under duress.

> Count Four: Breach of Official Duty: A declaratory judgment issue regarding all of the defendants deciding whether the negligence of the defendants was a breach of duty in their official capacities which caused damage to [Mr. Salim].

> Count Five: Fraud: A declaratory judg[m]ent issue regarding all the defendants deciding whether fraud was committed.

> Count Six: Civil Conspiracy: A declaratory judgment issue regarding all the defendants deciding whether they have committed a civil conspiracy against plaintiff.

> Count Seven: Misappropriation of Funds: A declaratory judgment issue regarding all the defendants deciding whether they knowingly and willfully misused public funds or were complicit in the act of such.

Count Eight: Unjust Enrichment: A declaratory judgment issue regarding all the defendants deciding whether they were unjustly enriched at the expense of [Mr. Salim].

Count Nine: Good Faith and Fair Dealing: A declaratory judgment issue regarding all the defendants deciding whether they breached the covenant of good faith and fair dealing with [Mr. Salim].

Count Ten: Tortious Interference with a Contractu[al] Relationship: A declaratory judgment issue regarding [Chaplain] Smith deciding whether he intentionally interfered with the contractual relationship between [Mr. Salim] and Grafton * * *.

Count Eleven: Intentional Infliction of Emotional Distress: A declaratory judgment issue regarding all the defendants deciding whether plaintiff suffered emotional distress as a result of their actions.

Count Twelve: Retaliation: A declaratory judgment issue regarding whether [Chaplain] Smith engaged in retaliatory behavior through third party individuals.

{¶3} In his prayer for judgment, Mr. Salim requested the relief as sought under each count, reasonable attorney fees and expenses and costs of the action, compensatory and punitive damages, and any other relief as deemed appropriate by the court. Thereafter, Mr. Salim filed an amendment to his complaint, in which he removed all requests for compensatory and punitive damages.

{¶4} The defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction. The defendants divided Mr. Salim's claims into three categories: the contract claims (claims one through four, nine, and ten), the state-law tort claims (claims five through eight, and eleven), and the First Amendment retaliation claim (claim twelve). The defendants maintained, in part, that the contract claims failed because the purported contract does not obligate the defendants to perform any particular services. The defendants further maintained that the First Amendment retaliation claim failed because isolated threats do not constitute adverse actions as a matter of law. Defendants

maintained that Mr. Salim's remaining claims were beyond the trial court's subject matter jurisdiction.

{¶5} Mr. Salim opposed the motion. Mr. Salim categorized his claims as a "declaratory action" which sought a declaration whether the contract he entered into with Grafton was a "valid and binding contract pursuant to [R].C. Chapter 2721, and [Civ.R.] 57." He maintained that his complaint also sought a "declaration regarding his rights to be free of retaliation, and a declaration whether the official misconduct of the defendants was in fact criminal."

{¶6} In a journal entry dated May 21, 2015, the trial court granted the defendant's motion to dismiss. Mr. Salim timely appealed, and he now presents four assignments of error for our review. We have reordered and consolidated the assignments of error to facilitate our discussion.

II.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED FINDING THAT IT LACKED JURISDICTION OVER COUNTS FIVE THROUGH EIGHT UNDER [CIV.R.] 12(B)(1).

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FINDING THAT THE A2 CONTRACT DOES NOT IMPOSE LEGAL OBLIGATIONS UPON THE DEFENDANTS AND THEN IMPROPERLY FOUND THAT THERE IS NO JUSTICIABLE ISSUE.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY FINDING THAT THE COMPLAINT FAILED TO STATE A CLAIM ON COUNTS ONE THROUGH FOUR, NINE, AND TEN UNDER [CIV.R.] 12(B)(6).

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED BY FINDING THAT THE COMPLAINT FAILED TO STATE A CLAIM ON COUNT TWELVE UNDER [CIV.R.] 12(B)(6).

**{¶7}** In his assignments of error, Mr. Salim maintains that the trial court erred in dismissing his claims.

**{¶8}** The trial court dismissed Mr. Salim's complaint on the defendants' motion filed pursuant to Civ.R. 12(B)(1) and (B)(6). Civ.R.12 (B)(1) provides that a party may move to dismiss a claim based upon the forum's lack of subject matter jurisdiction. Civ.R. 12(B)(6) provides that a party may move to dismiss a claim where the complaint fails to state a claim upon which relief can be granted. We review a motion to dismiss pursuant to Civ.R. 12(B)(1) and (B)(6) de novo, applying the same standard as the trial court but without deference to the trial court's determination. *Mellion v. Akron City School Dist. Bd. of Edn.*, 9th Dist. Summit No. 23227, 2007-Ohio-242, ¶ 6, citing *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 936 (10th Dist.2000); *Hunt v. Marksman Prods., Div. of S/R Industries, Inc.*, 101 Ohio App.3d 760, 762 (9th Dist.1995).

**{¶9}** We will address the propriety of dismissal of Mr. Salim's claims below insofar as these claims can be read as asserting tort claims, declaratory judgment claims, a purported claim for a declaration of criminal conduct, and a First Amendment retaliation claim.

"Tort" Claims

**{¶10}** First, with respect to the "tort" claims, the trial court concluded that it had no jurisdiction to hear these claims because they fell within the exclusive jurisdiction of the Court of Claims.

**{¶11}** "R.C. 2743.03 established the Court of Claims, vesting it with 'exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code.'" *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.* ("*Midview*"), 9th Dist. Lorain No. 14CA010596, 2015-Ohio-435, ¶ 12, quoting *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, ¶ 9. "A major purpose of the Court of Claims Act was to centralize the filing and adjudication of all claims against the state." *Midview* at ¶ 12, quoting *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 103 (1991). "However, 'R.C. Chapter 2743 does not divest other courts of this state of jurisdiction "to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief."'" *Midview* at ¶ 12, quoting *Santos* at ¶ 9, quoting R.C. 2743.03(A)(2).

**{¶12}** Here, the trial court concluded that, to the extent that Mr. Salim was alleging tort claims, exclusive jurisdiction for these claims fell within the Court of Claims. We agree with the trial court, to the extent that Mr. Salim's complaint could be read as asserting claims for monetary damages.

**{¶13}** However, Mr. Salim maintains that because he removed his specific requests for monetary relief from his prayer for judgment through his amendment, the trial court had jurisdiction to enter a "declaratory judgment" as to these claims under R.C. Chapter 2721 and Civ.R. 57. *See also* R.C. 2743.03(A)(2), and *Cardi v. State*, 10th Dist. Franklin No. 12AP-15, 2012-Ohio-6157, ¶ 8. Accordingly, to the extent that Mr. Salim seeks "declaratory judgment" as to these claims, we will discuss these claims with his request for declaratory judgment on his "[c]ontract" claims below.

Declaratory Judgment Pursuant to R.C. Chapter 2721

{¶14} Along with seeking declarations that the defendants engaged in tortious behavior, in six counts of his complaint which the parties referred to as the "[c]ontract" claims, Mr. Salim sought "declaratory judgment" pertaining to the A2 contract.

{¶15} R.C. 2721.02(A) provides, in relevant part, that "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for under this chapter. The declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree."

{¶16} Declaratory judgment may not be available "unless the trial court, within its discretion, finds that the action is consistent with the purposes of R.C. 2721.03" *Rose v. Primal Ability, Ltd.*, 10th Dist. Franklin No. 14AP-114, 2014-Ohio-3610, ¶ 13, citing *Mack v. Ohio State Dental Bd.*, 10th Dist. Franklin No. 00AP-578, 2001 WL 309115, *4 (Mar. 30, 2001), citing *Schaefer v. First Natl. Bank of Findlay*, 134 Ohio St. 511, 519 (1938). *See also Wilkins v. Harrisburg*, 10th Dist. Franklin No. 14AP-1028, 2015-Ohio-5472, ¶ 19 ("R.C. 2721.02(A) is read in conjunction with R.C. 2721.03[.]").

{¶17} R.C. 2721.03 provides:

> Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

{¶18} Here, with respect to Mr. Salim's "tort" claims contained in counts five through eight, and eleven, we cannot discern how these claims seek to "have determined any question of

construction or validity arising under [an] instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03. *Haley v. Bank of Am. Corp.*, 8th Dist. Cuyahoga No. 98207, 2012-Ohio-4824, ¶ 17 ("As set forth in R.C. 2721.03, the Declaratory Judgment Act contemplates a written contract or other writing for the court to interpret as to the rights and obligations of the parties thereto."); *Perry v. Bostelman*, 183 Ohio App.3d 281, 2009-Ohio-3497, ¶ 17-18 (6th Dist.).

**{¶19}** However, even could we read any of these counts as seeking a declaration as to the construction and rights under the A2 contract, the trial court concluded that the "contract" claims were not justiciable because the A2 contract did not impose legal obligations on the defendants. Mr. Salim challenges this determination as well.

**{¶20}** A complaint for declaratory judgment may be "dismissed for failure to state a claim upon which relief can be granted only if (1) no real controversy or justiciable issue exists between the parties, or (2) the declaratory judgment will not terminate the uncertainty or controversy." *Weyandt v. Davis*, 112 Ohio App.3d 717, 721 (9th Dist.1996), citing *Miller v. Summit Cty. Bd. of Edn.*, 9th Dist. Summit No. 15847, 1993 WL 99998, *1 (Apr. 7, 1993), citing *Fioresi v. State Farm Mut. Auto. Ins. Co.*, 26 Ohio App.3d 203, 203-204 (1st Dist.1985). As the Ohio Supreme Court has explained:

> Although broad in scope, the declaratory judgment statutes are not without limitation. Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." Not every conceivable controversy is an actual one. As the First District aptly noted, in order for a justiciable question to exist, the danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events and the threat to his position must be actual and genuine and not merely possible or remote.

(Internal quotations and citations omitted.) *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 9.

{¶21} "[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability, and should apply a de novo standard of review in regard to the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. Here, the trial court based its justiciability determination on its determination that that the A-2 contract did not impose legal obligations on the defendants. We review questions regarding contract interpretation de novo. *Stantec Consulting Servs. v. Velotta Co.*, 9th Dist. Medina Nos. 14CA0028-M, 14CA0034-M, 2015-Ohio-2310, ¶ 8. "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." (Quotations omitted.) *Price v. KNL Custom Homes, Inc.*, 9th Dist. Summit No. 26968, 2015-Ohio-436, ¶ 30.

{¶22} Here, the purported contract is entitled "A2 Faith-Based Housing Unit Contract[.]" It commences by providing a line for the inmate's name and "number[,]" and then provides that the inmate does "volunteer to participate in the A2 Faith-Based Housing Unit. The program rules and expectations have been explained to me and I understand the following[.]" Thereafter the A2 contract lists fifteen "[d]orm [r]ules" and twelve "[p]rogram [e]xpectations[.]" It then provides a line for a printed name and number, followed by a signature line, presumably for the inmate, as Mr. Salim alleged that he was forced to sign the contract. It then provides a line for a "Faith-Based Unit Team Member" as a witness.

{¶23} In arguing that the contract imposes obligations upon the defendants, Mr. Salim isolates language from the contract and interprets language setting forth expectations of him in the program as imposing obligations on the defendant. For example, he reads, "I will live in an inter-faith housing unit which will focus on faith-based programmin[g]," as an obligation of the defendants to ensure faith based housing is provided. He reads "I will encourage my family members to be involved with support services offered by a Minister of Record, mentors, instructors and the staff and team members of the A2 Faith-Based Housing Unit," as an obligation on the defendants to offer supports services to his family members. However, nothing in the contract imposes such obligations on the defendants, and it is clear from the language of the A2 contract that it recites merely the rules and expectations of the Housing Program's *participants*.

{¶24} Accordingly, the trial court did not error in concluding that the A2 contract imposed no obligations on the defendants. Based upon this, we cannot conclude the trial court abused its discretion in concluding that there existed no justiciable issue to be decided through a declaratory judgment action. *See Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, at ¶ 1; *see also Perry*, 183 Ohio App.3d 281, 2009-Ohio-3497, at ¶ 23 (construing a "letter" is not appropriate subject for declaratory judgment). Mr. Salim maintains that the trial court was further required to address whether a real controversy existed between the parties, and whether there was a situation in which speedy relief is necessary to preserve the parties' rights. However, having determined that there was no justiciable issue, Mr. Salim's claims for declaratory judgment were properly dismissed on that basis alone, and it was unnecessary for the trial court to address anything further pertaining to these claims. *See ProgressOhio.org, Inc v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 19 ("[T]he three prerequisites to declaratory relief are (1) a real

controversy between the parties, (2) justiciability, *and* (3) the necessity of speedy relief to preserve the parties' rights.) (Emphasis added.).

{¶25} Accordingly, Mr. Salim's first and third assignments of error, together with that portion of his second assignment of error challenging the trial court's dismissal of his "tort" and "[c]ontract" claims, are overruled.

Declaration of Criminal Conduct

{¶26} As part of his second assignment of error, Mr. Salim maintains that the trial court erred in dismissing his claim for a declaration that the defendants engaged in criminal conduct. In his introductory paragraph in his complaint, Mr. Salim sought a declaration as to whether the defendants engaged in criminal behavior. More specifically, in the seventh count of his complaint, Mr. Salim sought a "declaration" that the defendants had engaged in criminal conduct by "knowingly and willfully misus[ing] public funds or [being] complicit in the act of such."

{¶27} The trial court dismissed this portion of the claim by indicating that he had no jurisdiction to declare this behavior criminal, citing *In re Appointment of Special Prosecutor*, ("*Special Prosecutor*"), 6th Dist. Ottawa No. OT-01-030, 2002-Ohio-1874. Mr. Salim argues that *Special Prosecutor* does not apply because he "was not trying to secure an indictment, only a declaration of facts to determine if there were grounds for a criminal investigation to be initiated."

{¶28} Mr. Salim maintains that, because he is a pro se litigant, his complaint should have been liberally construed and the trial court should have performed its duty as a "reviewing official" pursuant to R.C. 2935.09(A). It is difficult to discern Mr. Salim's argument on this claim. He appears to maintain that the trial court should have considered his complaint as an affidavit, and then reviewed it to either issue a warrant or refer the matter to the prosecutor for

further investigation. *See* R.C. 2935.10, *State ex rel. Capron v. Dattilio*, 7th Dist. Columbiana No. 15 CO 008, 2015-Ohio-1900, ¶ 5, and *In re Slayman*, 5th Dist. Licking No. 08CA70, 2008-Ohio-6713, ¶ 21. However, we cannot discern how these cases, which pertain *to the commencement of criminal investigations*, relate to the dismissal of Mr. Salim's civil claim *in which he sought a declaration of criminal conduct*. Accordingly, to the extent that Mr. Salim argues that the trial court erred in dismissing his claim seeking a declaration of criminal conduct, his second assignment of error is overruled.

"Retaliation" Claim

{¶29} Mr. Salim argues that the trial court erred in dismissing the twelfth count of his complaint because he properly pleaded a First Amendment retaliation claim.

{¶30} "A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment." *King v. Zamiara*, 150 Fed.Appx. 485, 491 (6th Cir.2005). Such a claim requires the plaintiff to establish that "(1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by his protected conduct." *Id.*

{¶31} The trial court dismissed this claim under Civ.R. 12(B)(6) because it concluded that Mr. Salim had failed to properly plead a First Amendment retaliation claim in that he alleged a one-time incident that was not directed at him and did not deter him.

{¶32} However, this Court has held that, with respect to Civ.R. 12(B)(6), dismissal of a claim is appropriate where, after accepting as true all factual allegations of the claim and resolving all reasonable inferences in favor of the nonmoving party, "it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief."

*LaSalle Bank, N .A. v. Kelly*, 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668, ¶ 19, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). Taking as true the facts of the complaint, after Mr. Salim commenced the grievance procedure against Chaplain Smith, Chaplain Smith indirectly threatened Mr. Salim by telling his cellmate that the filing of grievances against him would result in the complainant's placement on a list associated with gang-affiliation and would result in the complainant's transfer.

{¶33} Taking as true Mr. Salim's allegations in his complaint, and resolving all inferences in his favor, we cannot say there exists no set of facts under which he could prove his retaliation claim. *See LaSalle Bank, N.A.* at ¶ 19. Accordingly, Mr. Salim's fourth assignment of error is sustained.

III.

{¶34} Mr. Salim's first, second, and third assignments of error are overruled. Mr. Salim's fourth assignment of error is sustained. The judgment of trial court is affirmed in part, reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

RYAN SALIM, pro se, Appellant.

MICHAEL DEWINE, Attorney General, and JUDITH B. GOLDSTEIN, Assistant Attorney General, for Appellee.