**[Cite as *Swiniarski v. Lorain Cty. Bd. of Commrs.*, 2025-Ohio-5701.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

ALEXIS SWINIARSKI

    Appellant

    v.

LORAIN COUNTY BOARD OF
COMMISSIONERS

    Appellee

C.A. No.    24CA012185

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    23 CV 210597

DECISION AND JOURNAL ENTRY

Dated: December 22, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Alexis Swiniarski appeals from the judgments of the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} This appeal involves a dispute regarding the Lorain County Board of Commissioners' (the "Board") termination of Swiniarski's employment. At the time of her termination, Swiniarski was employed as the Benefits Coordinator for Lorain County, and was supervised by Jen Sinatra (the then-Director of Human Resources).

**Swiniarski's First Termination**

{¶3} On February 8, 2021, Swiniarski received a "Notice of Pre-Disciplinary Conference" (the "First Notice") signed by Sinatra. The First Notice informed Swiniarski that a pre-disciplinary conference was scheduled for February 9, 2021, and that Rob Weber (the then-Deputy County Administrator) would serve as the hearing officer. The First Notice also informed

Swiniarski that the purpose of the conference was to allow her to respond to allegations that: "(1) [she] may have removed part of a former Lorain County employee['s] . . . personnel record and shared it with another person or persons and (2) ha[d] been dishonest in recent communications regarding departmental operations and restructuring." More specifically, the allegations pertained to: (1) an incident wherein Swiniarski took a photograph on her phone of another employee's termination letter and sent it to a former employee; and (2) an incident wherein Swiniarski allegedly told Sinatra that an employee could not attend certain training, only for Sinatra to later learn that this was not accurate and that Swiniarski had misrepresented certain facts to Sinatra regarding the training.

{¶4} Swiniarski, Sinatra, and Weber attended the pre-disciplinary conference. After the conference, Weber sent Tom Williams (the then-County Administrator) a letter, explaining his findings and concluding that Swiniarski had violated certain rules and engaged in dishonest behavior.

{¶5} The following day (February 10, 2021), the Board issued a resolution terminating Swiniarski's employment effective February 10, 2021. That same day, Williams signed an "Order of Removal," listing himself as Swiniarski's "Appointing Authority[.]" Williams, however, was not Swiniarski's Appointing Authority. Due to this error, the Board rescinded Swiniarski's termination effective March 3, 2021, and converted that time to paid administrative leave.

{¶6} Prior to the recission of her termination, Swiniarski had filed an appeal of the Board's decision to terminate her employment with the State Personnel Board of Review (the "SPBR"). The Board later notified the SPBR that it had rescinded Swiniarski's termination. As a result, the SPBR dismissed Swiniarski's appeal.

### Swiniarski's Second Termination

**{¶7}** Swiniarski received a second "Notice of Pre-Disciplinary Conference" (the "Second Notice") signed by Sinatra and dated March 3, 2021. The Second Notice informed Swiniarski that a pre-disciplinary conference was scheduled for March 8, 2021, and that Weber would again serve as the hearing officer. The Second Notice also informed Swiniarski that the purpose of the conference was to allow her to respond to the allegations contained in the First Notice, as well as additional allegations of misconduct that were discovered after her since-rescinded termination.

**{¶8}** Regarding the additional allegations of misconduct, the Second Notice alleged that Swiniarski: (1) failed to process approximately $840,655.58 in checks for various healthcare payments; (2) failed to process and/or remove approximately 15 terminated employees from various county benefit programs and failed to offer those employees COBRA benefits; (3) failed to process new hire paperwork for approximately 20-30 employees; (4) failed to create and/or maintain appropriate personnel/benefits files for new employees hired in 2020; (5) failed to file required reporting under the Affordable Care Act; and (6) altered and back dated official public records by using the stamp of the former County Administrator's signature after his termination.

**{¶9}** Weber and Sinatra attended the pre-disciplinary conference on March 8, 2021. Swiniarski did not attend. After the conference, Weber sent Williams a letter, explaining his findings and concluding that Swiniarski had violated certain rules and engaged in dishonest behavior. The Board issued a resolution on March 10, 2021, terminating Swiniarski's employment effective March 11, 2021.

{¶10} On May 21, 2021, Swiniarski appealed the Board's decision terminating her employment to the SPBR. The SPBR dismissed Swiniarski's appeal as untimely because Swiniarski did not file the appeal within the required time period.

**Swiniarski's Complaint**

{¶11} In 2022, Swiniarski filed a complaint against the Board and Sinatra in the Lorain County Court of Common Pleas, which she later voluntarily dismissed. Swiniarski re-filed her complaint in October 2023, asserting claims against the Board, Sinatra, and Williams (collectively, "Defendants"). Swiniarski captioned her claims as follows:

1. 42 USC 1983 First Amendment
2. Public Official Intimidation
3. *Greeley* Claim
4. Sex Discrimination

{¶12} Regarding her claim captioned "42 USC 1983 First Amendment[,]" Swiniarski alleged that the Board terminated her employment in retaliation for her "blowing a whistle on corrupt government practices." More specifically, Swiniarski alleged that the Board terminated her employment one week after she reported "corrupt and fraudulent medical billing activities involving the Lorain County Jail." Swiniarski alleged that Sinatra emailed her on February 4, 2021, requesting a status update on Swiniarski's investigation into medical billing issues involving inmates at the Lorain County jail. Swiniarski alleged that she "made her complaint about illegal action" regarding those billing issues in her email in response to Sinatra's request for a status update. Swiniarski alleged that, a few days later, Sinatra and Weber handed her the First Notice.

{¶13} Regarding her claim for public official intimidation, Swiniarski alleged that Sinatra created a "spurious document" that falsely accused her of undermining Sinatra and made misrepresentations to justify her termination. Swiniarski alleged that Sinatra created the document to hinder her from "continuing to report on and sound alarm on fraudulent practices at [the] Lorain

County Jail . . . ." Swiniarski also alleged that "Williams combined with Sinatra by executing an illegal order terminating [her] employment[,]" which the Board ratified. (Capitalization omitted.) At her deposition, Swiniarski clarified that the "spurious document" referred to in her complaint was the First Notice.

{¶14} Regarding her *Greeley* claim (i.e., a claim for wrongful termination in violation of public policy), Swiniarski alleged that she was wrongfully terminated because she complained about the fraudulent billing practices at the Lorain County jail, which Defendants wanted to conceal and/or prevent her from continuing to investigate.

{¶15} Regarding her claim for sex discrimination, Swiniarski alleged that Weber (the hearing officer) expressed bias at his deposition (taken after Swiniarski filed her first complaint but before she re-filed her complaint) when he referred to Swiniarski and her co-workers as "gossipy women . . . ." Swiniarski alleged that this bias resulted in Weber not allowing her to call witnesses in her defense at the first pre-disciplinary conference. Swiniarski also alleged that Weber's conduct deprived her of a fair hearing process, which resulted in her termination.

**Defendants' Motion to Dismiss**

{¶16} Defendants moved to dismiss Swiniarski's complaint under Civ.R. 12(B)(1) and 12(B)(6). Defendants argued, in part, that: (1) the trial court lacked subject-matter jurisdiction over Swiniarski's claim captioned "42 USC 1983 First Amendment" because her claim was, in fact, a whistleblower claim that required Swiniarski to exhaust her administrative remedies first, which she failed to do; (2) Swiniarski could prove no set of facts that would entitle her to relief on her claim for public official intimidation because the only documents Swiniarski relied upon in support of her claim were the First Notice and the Second Notice, and Swiniarski alleged no operative facts indicating that Sinatra intimidated her; (3) Swiniarski's *Greeley* claim failed

because *Greeley* claims are only available to at-will employees, not classified employees like Swiniarski; and (4) Swiniarski could prove no set of facts that would entitle her to relief on her claim for sex discrimination because: (a) her claim hinged entirely upon Weber's "off-hand" remark about "gossipy women[,]" which he made at his deposition almost two years after Swiniarski's termination and had no bearing on the Board's decision to terminate her employment; and (b) she could not establish a prima facie case of sex discrimination because she was not replaced by someone outside of her protected class.

{¶17} Swiniarski opposed Defendants' motion to dismiss. The trial court granted Defendants' motion to dismiss on Swiniarski's claim captioned "42 USC 1983 First Amendment[,]" but denied the remainder of Defendants' motion.

{¶18} In granting Defendants' motion to dismiss on Swiniarski's claim captioned "42 USC 1983 First Amendment[,]" the trial court explained that her claim was clearly a whistleblower claim under R.C. 124.341. The trial court explained that Swiniarski's exclusive remedy for such a claim was to file a timely appeal of the Board's decision to the SPBR, which Swiniarski failed to do. The trial court reasoned that Swiniarski's "tortured recharacterization" of her whistleblower claim as an original federal cause of action was simply an attempt to "make an end run" around her failure to file a timely appeal to the SPBR. The trial court concluded that it lacked subject-matter jurisdiction over Swiniarski's claim, and dismissed it on that basis.

**Defendants' Motion for Summary Judgment**

{¶19} After a period of discovery, Defendants moved for summary judgment on the remainder of Swiniarski's claims. Defendants again argued that: (1) Swiniarski's *Greeley* claim failed as a matter of law because *Greeley* claims are only available to at-will employees, not classified employees like Swiniarski; (2) Swiniarski's claim for public official intimidation failed

because the only documents Swiniarski relied upon in support of her claim were the First Notice and the Second Notice, and Swiniarski testified at her deposition that Sinatra did not influence, intimidate, or hinder her in the discharge of her duties; and (3) Swiniarski's claim for sex discrimination failed as a matter of law because: (a) her claim hinged entirely upon Weber's "off-hand" remark about "gossipy women[,]" which he made at his deposition almost two years after Swiniarski's termination and had no bearing on the Board's decision to terminate her employment; and (b) she could not establish a prima facie case of sex discrimination because she was not replaced by someone outside of her protected class.

{¶20} In support of their motion for summary judgment, Defendants attached several documents, including: (1) the First Notice; (2) Weber's letter to Williams dated February 9, 2021, explaining that Swiniarski had violated certain rules and engaged in dishonest behavior; (3) the Board's resolution dated February 10, 2021, that terminated Swiniarski's employment effective February 10, 2021; (4) the Order of Removal dated February 10, 2021, and signed by Williams; (5) the Board's resolution dated March 3, 2021, that rescinded Swiniarski's February 10, 2021, termination; (6) the Second Notice; (7) Weber's letter to Williams dated March 9, 2021, explaining that Swiniarski had violated certain rules and engaged in dishonest behavior; (8) the Board's resolution dated March 10, 2021, that terminated Swiniarski's employment effective March 11, 2021; (9) Swiniarski's appeal of the Board's February 10, 2021, termination of her employment to the SPBR wherein Swiniarski represented that she was a "protected classified civil servant[;]" (10) the SPBR's dismissal of Swiniarski's appeal of her since-rescinded termination; (11) the SPBR's dismissal of Swiniarski's appeal of the Board's decision to terminate her employment effective March 11, 2021, on the basis that it was untimely filed; (12) a questionnaire Swiniarski completed while employed as the Benefits Coordinator wherein Swiniarski described her job

duties and responsibilities; and (13) an excerpt from the Lorain County Personnel Manual Swiniarski received as a part of her employment that stated: "All employees of the Employer are presumed to be classified civil servants unless the position an employee occupies has been exempted from the classified service by a lawful request of the Employer, or by operation of law."

### Swiniarski's Opposition to Defendants' Motion for Summary Judgment

{¶21} Swiniarski opposed Defendants' motion for summary judgment. Swiniarski argued that: (1) she was an at-will, unclassified employee who was entitled to bring a *Greeley* claim; (2) her claim for public official intimidation had merit because it was undisputed that Sinatra hampered and interfered with her job duties by taking her "off the job" after she complained about suspected medical billing fraud; and (3) a reasonable juror could conclude that Weber was biased against her because of her sex, and that his bias "played a part in the decision-making process" that resulted in the termination of her employment.

{¶22} In support of her opposition to Defendants' motion for summary judgment, Swiniarski attached: (1) her own affidavit; (2) a copy of the complaint; and (3) a memorandum the Board filed with the SPBR related to the Board's recission of her termination wherein the Board represented that a question existed as to whether Swiniarski was a classified or unclassified employee. Defendants then filed a reply brief in support of their motion for summary judgment.

### The Trial Court's Decision

{¶23} The trial court granted Defendants' motion for summary judgment. First, the trial court determined that Swiniarski's *Greeley* claim failed as a matter of law because Swiniarski was a classified civil servant, not an at-will employee entitled to bring a *Greeley* claim. Second, the trial court determined that Swiniarski's claim for public official intimidation failed as a matter of law because the written communications upon which Swiniarski based her claim (i.e., the First

Notice and the Second Notice) simply set forth the allegations against her, and there was no evidence that Defendants intended to influence, intimidate, or hinder Swiniarski in the discharge of her duties. Third, the trial court determined that Swiniarski's claim for sex discrimination failed as a matter of law because the evidentiary materials submitted did not establish a claim for sex discrimination.

{¶24} Swiniarski now appeals the trial court's decision that granted Defendants' motion to dismiss her claim captioned "42 USC 1983 First Amendment[,]" as well as the trial court's decision that granted Defendants' motion for summary judgment on the remainder of her claims. Swiniarski has raised four assignments of error for this Court's review.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR DISMISSING COUNT ONE OF THE COMPLAINT UNDER OHIO CIVIL RULE 12(B)(1) AFTER FINDING THE COURT HAS NO JURISDICTION OVER THE APPELLANT'S FIRST AMENDMENT CLAIMS BROUGHT UNDER 42 USC 1983[.]

{¶25} In her first assignment of error, Swiniarski argues that the trial court erred by granting Defendants' motion to dismiss her claim captioned "42 USC 1983 First Amendment" on the basis that it lacked subject-matter jurisdiction. For the following reasons, this Court overrules Swiniarski's first assignment of error.

{¶26} Civ.R. 12(B)(1) provides that a party may move to dismiss a claim based upon the lack of subject matter jurisdiction. "We review a motion to dismiss pursuant to Civ.R. 12(B)(1) . . . de novo, applying the same standard as the trial court but without deference to the trial court's determination." *Salim v. Smith*, 2016-Ohio-2764, ¶ 8 (9th Dist.).

{¶27} Here, the trial court determined that Swiniarski's claim captioned "42 USC 1983 First Amendment" was clearly a whistleblower claim, and that her exclusive remedy was to file a

timely appeal of the Board's decision to the SPBR, which Swiniarski failed to do. As a result, the trial court concluded that it lacked subject-matter jurisdiction over Swiniarski's claim.

{¶28} Initially, this Court agrees with the trial court's conclusion that Swiniarski's cause of action captioned "42 USC 1983 First Amendment" was an attempt to recharacterize her whistleblower claim, which she failed to timely appeal to the SPBR. Swiniarski alleged throughout her complaint that Defendants terminated her employment because she reported potential fraud involving medical billing at the Lorain County jail to Sinatra. Despite her efforts to recharacterize her claim as a constitutional claim, the substance of Swiniarski's claim was a whistleblower claim under R.C. 124.341.

{¶29} Having agreed with the trial court's conclusion that Swiniarski's claim was a whistleblower claim, this Court will next address the issue of subject-matter jurisdiction. "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a case." *Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 20. "Without subject-matter jurisdiction, a trial court has no power to act." *Id.*

{¶30} "The Ohio Constitution gives the General Assembly the power to define the limits of the common pleas courts' jurisdiction." *Id.* at ¶ 21. "The General Assembly has given the common pleas courts subject-matter jurisdiction over all civil cases that it has not expressly excluded from their jurisdiction." *Id.* "It has also given jurisdiction to certain administrative agencies over cases that the agencies are particularly well suited to handle." *Id.* at ¶ 22. "The General Assembly vests *exclusive jurisdiction* in an administrative agency when it enacts a comprehensive statutory scheme for review by that agency." (Emphasis added.) *Id.* "When [the Ohio Supreme Court has] found that a court of common pleas lacks jurisdiction, 'it is almost

always because a statute explicitly removed that jurisdiction.'" *Binder v. Cuyahoga Cty.*, 2020-Ohio-5126, ¶ 23, quoting *Ohio High School Athletic Assn. v. Ruehlman*, 2019-Ohio-2845, ¶ 9.

**{¶31}** R.C. 124.341(D) provides that, if an appointing authority takes any disciplinary or retaliatory action against a whistleblower, then "the employee's *sole and exclusive remedy*, notwithstanding any other provision of law, is to file an appeal with the [SPBR] within thirty days after receiving actual notice of the appointing authority's action." (Emphasis added.) R.C. 124.341(D); *see Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 158 (1997). By enacting R.C. 124.341, the General Assembly created an administrative-review process for civil servants to challenge any disciplinary or retaliatory action taken against them for making a report under R.C. 124.341(A). That administrative process, by its own terms, is the "sole and exclusive remedy" available to those individuals. *See Pivonka* at ¶ 23. As a result, the trial court lacked subject-matter jurisdiction over Swiniarski's whistleblower claim, which Swiniarski failed to timely appeal to the SPBR. *See id.* at ¶ 25; *compare Binder* at ¶ 23-27 (acknowledging that if a statute creating an administrative-review process *does not* contain language indicating that it is the "sole or exclusive remedy to aggrieved employees[,]" then the statute does not divest the trial court of subject-matter jurisdiction). Consequently, the trial court did not err when it dismissed Swiniarski's claim under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction. Swiniarski's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR DISMISSING COUNT THREE OF THE COMPLAINT FOR WRONGFUL TERMINATION IN VIOLATION OF OHIO PUBLIC POLICY UNDER OHIO CIVIL RULE 56 FINDING THE APPELLANT WAS A CLASSIFIED CIVIL SERVANT AS A MATTER OF LAW.

{¶32} In her second assignment of error, Swiniarski argues that the trial court erred by granting summary judgment in favor of Defendants on her *Greeley* claim. More specifically, Swiniarski argues that the trial court erred by determining that she was a classified civil servant who was not entitled to bring a *Greeley* claim. For the following reasons, this Court overrules Swiniarski's second assignment of error.

## Summary Judgment Standard

{¶33} Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

## *Greeley* Claims

{¶34} As noted, Swiniarski asserted a *Greeley* claim in her complaint, which is a claim for wrongful termination in violation of public policy. "*Greeley* and its progeny stand for the proposition that, in Ohio, the judicially recognized doctrine of employment at will has certain limitations." *Kulch*, 78 Ohio St.3d at 155, citing *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228 (1990). "One of those limitations is that the doctrine will not

be followed in cases where an at-will employee is discharged or disciplined for a reason that violates a statute and thereby contravenes public policy." *Kulch* at 155, citing *Greeley* at paragraphs one and two of the syllabus. Thus, *Greeley* held that an at-will employee can bring a cause of action for wrongful termination in violation of public policy. *Greeley* at 234-235.

{¶35} As discussed below, unclassified civil servants—as opposed to classified civil servants—are at-will employees. *See Temple v. City of Dayton*, 2005-Ohio-57, ¶ 78 (2d Dist.) ("unclassified employees are employees-at-will . . . ."). Accordingly, only unclassified civil servants can bring a *Greeley* claim. *See Haven v. Lodi*, 2022-Ohio-3957, ¶ 9 (9th Dist.), citing *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254 (1995), syllabus ("A *Greeley* cause of action may only be brought by an at-will employee.").

### Classified and Unclassified Civil Servants

{¶36} "Ohio's civil service scheme is embedded in the Ohio Constitution and is enacted in R.C. Chapter 124." *Hooper v. Univ. of Cincinnati*, 2000 WL 674909, *2 (10th Dist. May 25, 2000). "Civil service in Ohio is divided into either the classified or the unclassified service." *Davidson v. Sheffield-Sheffield Lake Bd. of Educ.*, 1990 WL 72316, *1 (9th Dist. May 23, 1990), citing R.C. 124.11. "[T]he chief distinguishing characteristic between employees in the classified service and those in the unclassified service is the procedural protection afforded to classified servants from arbitrary removal from their employment." *Davidson* at *1, citing R.C. 124.34.

{¶37} "Generally, classified civil servants have a right to a hearing before removal, the employer must show cause for removal, and the employer's actions are subject to further review." *Davidson* at *1. "Unclassified civil servants are not afforded such procedural protections, and have no entitlement to continued employment." *Id.* at *2. "Unclassified civil servants serve at the discretion of the appointing authority, and may be dismissed from their employment without

cause." *Id.* at \*2. More simply, "unclassified employees are employees-at-will who do not enjoy the same procedural protections as classified employees." *Temple*, 2005-Ohio-57, at ¶ 78 (2d Dist.).

{¶38} R.C. 124.11(A) identifies 32 positions that are in the "unclassified service." "An employee is classified unless her position is specifically included in the unclassified service." *Baker v. Columbiana Cty. Aud.*, 2004-Ohio-839, ¶ 11 (10th Dist.), citing R.C. 124.11(B). "Mere title does not conclusively determine whether an employee is a member of the unclassified service pursuant to R.C. 124.11." *Id.* at ¶ 15. Instead, "[t]he actual duties assigned to and performed by the employee will determine the employee's status." *Id.*; *Hooper* at \*2.

### Summary Judgment Briefing on Swiniarski's *Greeley* Claim

{¶39} In their motion for summary judgment, Defendants argued that Swiniarski's *Greeley* clam failed as a matter of law because Swiniarski was a classified employee, not an at-will employee. Defendants argued that Swiniarski's position as Benefits Coordinator was not listed within the unclassified positions under R.C. 124.11(A), nor did it conceivably fit within any of those positions. As a result, Defendants argued that Swiniarski was irrefutably a classified employee.

{¶40} Defendants correctly anticipated that Swiniarski would respond to their motion by arguing that she was an unclassified employee because her position fell within R.C. 124.11(A)(8). R.C. 124.11(A)(8) provides that unclassified civil service positions include "four clerical and administrative support employees for each board of county commissioners and one such employee for each county commissioner . . . ." Defendants argued, in part, that Swiniarski's position did not fall within R.C. 124.11(A)(8) because: (1) she reported to Sinatra, not the Board; (2) her job duties and responsibilities as described by Swiniarski herself established that she was not a clerical or

administrative support employee of the Board or an individual Commissioner; and (3) Swiniarski admitted in her notice of appeal to the SPBR that she was a classified employee.

{¶41} In support of their arguments, Defendants cited: (1) portions of Swiniarski, Williams, and Sinatra's deposition transcripts indicating that Swiniarski reported to Sinatra, not the Board; (2) portions of Swiniarski's deposition transcript wherein she described her primary job responsibilities; (3) a questionnaire Swiniarski completed while employed as the Benefits Coordinator wherein Swiniarski described her job duties and responsibilities; (4) an excerpt from the Lorain County Personnel Manual Swiniarski received as a part of her employment that stated: "All employees of the Employer *are presumed to be classified civil servants* unless the position an employee occupies has been exempted from the classified service by a lawful request of the Employer, or by operation of law[;]" and (5) Swiniarski's notice of appeal to the SPBR wherein Swiniarski indicated that she was a "protected classified civil service employee . . . ." (Emphasis added.)

{¶42} Regarding Swiniarski's deposition testimony, Defendants cited a portion of the transcript wherein Swiniarski described her job responsibilities as follows:

> My primary responsibilities were managing the eligibility for the healthcare plan, any employee benefit questions, responding to any kind of concerns, claims issues, managing payroll deductions. Those are the primary functions. I'd work and do, you know, administrative work putting all the employees into the carrier systems. I managed the COBRA for County employees. There are also outside entities on our plan. I managed the healthcare eligibility for them, as well.

{¶43} Regarding the questionnaire Swiniarski completed while employed as the Benefits Coordinator, Defendants pointed to the following language:

> Responsible for planning, overseeing, and administering the County's employee benefit programs; medical, prescription, dental, vision, COBRA, flexible spending, life insurance, other cafeteria plan products. Serves as health benefits administrator for the joint self-insurance health care benefits program, Lorain County Health Plan, consisting of 20 County departments and 26 political subdivisions. Manages

daily eligibility and enrollment, researching benefit and cost savings options, and working with all insurance carriers to ensure the efficient operation of the Lorain County Health Plan.

Relying, in part, on Swiniarski's own description of her job duties, Defendants argued that it was irrefutable that Swiniarski's position as Benefits Coordinator was not one of the four clerical and administrative support positions under R.C. 124.11(A)(8).

{¶44} As Defendants anticipated, Swiniarski responded to their motion for summary judgment by arguing that her position as Benefits Coordinator fell within R.C. 124.11(A)(8) because it was an administrative or clerical position. Swiniarski also argued that Defendants were estopped from arguing that she was a classified employee because they asserted that a dispute existed as to whether Swiniarski was a classified employee in a filing before the SPBR. Swiniarski further argued that Sinatra and Weber were employees of the Board, and that they were acting on behalf of the Board when they sought the termination of her employment. In support of her arguments, Swiniarski attached: (1) a copy of her complaint; (2) her own affidavit wherein she averred she was an at-will employee; and (3) a memorandum the Board filed with the SPBR wherein the Board represented that a question existed as to whether Swiniarski was a classified or unclassified employee.

### The Trial Court's Decision on Swiniarski's *Greeley* Claim

{¶45} The trial court granted Defendants' motion for summary judgment on Swiniarski's *Greeley* claim on the basis that Swiniarski was a classified employee, not an at-will employee. The trial court explained, in part:

> [Swiniarski] was not clerical or support staff for the commissioners. The commissioners have separate administrative staff that is separate from the other Lorain County government departments. County personnel such as [Swiniarski] that perform clerical or administrative work would not automatically default into R.C. 124.11(A)(8). The Court finds as a matter of law that Plaintiff Swiniarski performed administrative duties for the human resources department for all of

Lorain County as a benefits coordinator. Therefore, she does not fall within R.C. 124.11(A)(8) as clerical and administrative support for the commissioners. She was a classified civil servant.

**Analysis**

{¶46} Having conducted a de novo review, this Court concludes that the trial court did not err when it granted Defendants' motion for summary judgment on Swiniarski's *Greeley* claim. Defendants met their initial burden on summary judgment by pointing to evidentiary materials indicating that Swiniarski's position as a Benefits Coordinator did not fall within R.C. 124.11(A)(8). This included Swiniarski's own deposition testimony as to her job responsibilities, her responses to a questionnaire wherein she described her job duties and responsibilities, as well as portions of the personnel manual Swiniarski received as a part of her employment.

{¶47} The burden then shifted to Swiniarski to set forth specific facts showing that a genuine issue of material fact existed as to whether she was a classified or unclassified civil servant. Swiniarski failed to meet her reciprocal burden because she failed to point to evidentiary materials that created a genuine issue of material fact as to whether she was one of the "four clerical and administrative support employees for each board of county commissioners and one such employee for each county commissioner" under R.C. 124.11(A)(8). Instead, she primarily argued that she provided clerical and administrative support to the Board because Sinatra, her supervisor, also worked for the Board, and Defendants previously acknowledged that a dispute existed as to whether she was a classified or unclassified employee.

{¶48} This Court holds that Swiniarski did not satisfy her reciprocal burden of setting forth specific facts showing that a genuine issue of material fact existed as to whether she was a classified or unclassified civil servant. Because *Greeley* claims are reserved for at-will employees, the trial court did not err by granting summary judgment in favor of Defendants on Swiniarski's

*Greeley* claim. *See Haven*, 2022-Ohio-3957, at ¶ 9, 12 (9th Dist.) ("A *Greeley* cause of action may only be brought by an at-will employee[,]" and a plaintiff pursuing a *Greeley* claim "must plead and prove that [s]he was an at-will employee.'"). Swiniarski's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR DISMISSING COUNT TWO OF THE COMPLAINT UNDER OHIO CIVIL RULE 56 FINDING THERE IS NO EVIDENCE THAT APPELLANT'S SUPERVISOR INFLUENCED, INTIMIDATED OR HINDERED A PUBLIC EMPLOYEE IN THE PERFORMANCE OF HER JOB DUTIES.

{¶49} In her third assignment of error, Swiniarski argues that the trial court erred by granting Defendants' motion for summary judgment on her claim for public official intimidation. For the following reasons, this Court overrules Swiniarski's third assignment of error.

{¶50} The standard of review set forth in this Court's discussion of Swiniarski's second assignment of error regarding motions for summary judgment also applies to this assignment of error. In her complaint, Swiniarski brought a claim for public official intimidation under R.C. 2921.03(A), which provides:

No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the . . . duties of the public servant, party official, attorney, or witness.

{¶51} In their motion for summary judgement, Defendants argued that Swiniarski's claim for public official intimidation failed because the only "writing[s]" Swiniarski relied upon in support of her claim were the First Notice and the Second Notice, which simply advised Swiniarski of the allegations of misconduct against her. Defendants also argued that Swiniarski testified at her deposition that Sinatra did not influence, intimidate, or hinder her in the discharge of her duties.

**{¶52}** In response, Swiniarski did not dispute that the only "writing[s]" she relied upon in support of her claim were the First Notice and the Second Notice. Swiniarski argued that Sinatra hampered and interfered with her job duties because she was "taken off the job" and ultimately fired for reporting potential medical billing fraud.

**{¶53}** The trial court granted summary judgment in favor of Defendants on Swiniarski's claim for public official intimidation, explaining, in part:

> [Swiniarski] received the written communication describing the complaints against her in preparation for her employment hearing. There is no evidence that the writings were intended to influence, intimidate, or hinder the plaintiff in the discharge of her duties as a public servant.

**{¶54}** Having conducted a de novo review, this Court concludes that the trial court did not err when it granted Defendants' motion for summary judgment on Swiniarski's claim for public official discrimination. Defendants met their initial burden on summary judgment by pointing to evidentiary materials (including the First Notice, the Second Notice, and Swiniarski's deposition testimony) indicating that Defendants did not provide Swiniarski with the First Notice or Second Notice to attempt to influence, intimidate, or hinder her in the discharge of her duties as a public servant. In response, Swiniarski asserted that the fact that she was "taken off the job" and ultimately fired established that Defendants interfered with her job duties. This Court concludes that Swiniarski failed to meet her reciprocal burden of setting forth specific facts showing that a genuine issue of material fact existed as to her claim for public official intimidation. Accordingly, the trial court did not err by granting summary judgment in favor of Defendants on this claim. Swiniarski's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR DISMISSING COUNT FOUR OF THE COMPLAINT FOR SEX

DISCRIMINATION UNDER OHIO CIVIL RULE 56 FINDING INSUFFICIENT EVIDENCE PRESENTED TO ESTABLISH THE CLAIM.

**{¶55}** In her fourth assignment of error, Swiniarski argues that the trial court erred by granting Defendants' motion for summary judgment on her claim for sex discrimination. For the following reasons, this Court overrules Swiniarski's fourth assignment of error.

**{¶56}** The standard of review set forth in this Court's discussion of Swiniarski's second assignment of error regarding motions for summary judgment also applies to this assignment of error. In her complaint, Swiniarski brought a claim for sex discrimination under R.C. 4112.02(A), which provides that it is unlawful:

> [f]or any employer, because of the . . . sex . . . of any person, to discharge without just cause, . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

**{¶57}** "A plaintiff may demonstrate the existence of discriminatory practices with direct or indirect evidence." *Morgan v. Consun Food Industries, Inc.*, 2024-Ohio-2300, ¶ 34 (9th Dist.). "Direct evidence of discrimination is evidence that proves that discrimination has occurred without requiring further inferences." *McFee v. Nursing Care Mgt. of Am., Inc.*, 2010-Ohio-2744, ¶ 34, quoting *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006). "Direct evidence in a sex-based discrimination context usually comes in the form of an unequivocal assertion that a woman was fired because of her gender." *Murphy v. Univ. of Cincinnati*, 72 Fed.Appx. 288, 294 (6th Cir. 2003), "Vague, ambiguous, or isolated comments cannot be used as direct evidence to establish that an adverse action was motivated by discriminatory intent." *Chapa v. Genpak, L.L.C.*, 2014-Ohio-897, ¶ 90 (10th Dist.).

**{¶58}** Regarding discrimination claims based upon indirect evidence, this Court has explained:

> "Ohio courts analyze discrimination claims which are based on indirect evidence under the framework provided by *McDonnell Douglas Corp. v. Green* . . ." Under that framework, "[t]o establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person." . . . A plaintiff may also satisfy the fourth prong by presenting evidence that he was "treated differently than similarly situated non-protected employees." . . . .

*Morgan* at ¶ 35.

{¶59} In their motion for summary judgment, Defendants argued that Swiniarski's claim for sex discrimination failed as a matter of law because: (1) her claim hinged entirely upon Weber's "off-hand" remark about "gossipy women[,]" which he made at his deposition almost two years after Swiniarski's termination and had no bearing on the Board's decision to terminate her; and (2) she could not establish a prima facie case of sex discrimination because she was not replaced by someone outside of her protected class. In support of their arguments, Defendants cited to portions of Swiniarski's deposition testimony wherein Swiniarski acknowledged that she was replaced by another female. In response, Swiniarski argued that Weber's comment about "gossipy women" evidenced his bias against her, and that a jury could conclude that her sex played a role in the decision to terminate her employment.

{¶60} Having reviewed the record de novo, this Court concludes that the trial court did not err by granting summary judgment in favor of Defendants on Swiniarski's claim for sex discrimination. Defendants met their initial burden on summary judgment by pointing to evidentiary materials indicating that Swiniarski's claim was entirely based upon an isolated comment made almost two years after her termination. This Court's review of Weber's deposition transcript indicates that Weber made the comment after Swiniarski's counsel repeatedly asked him why Swiniarski sent a photograph of an employee's termination letter to a former employee. Weber initially responded that he did not know. When questioned further, Weber responded: "I

have no idea. I don't know what she was doing. A bunch of stupid women gossip." This isolated comment did not amount to direct evidence of discrimination. *See Chapa* at ¶ 90 ("Vague, ambiguous, or isolated comments cannot be used as direct evidence to establish that an adverse action was motivated by discriminatory intent.").

**{¶61}** Defendants also met their initial burden on summary judgment by pointing to evidentiary material indicating that Swiniarski could not establish a prima facie case of sex discrimination because Swiniarski was not replaced by someone outside of her protected class. More specifically, Defendants pointed to Swiniarski's deposition testimony wherein Swiniarski acknowledged that she was replaced by a female. *See Morgan,* 2024-Ohio-2300, at ¶ 35 (9th Dist.) (explaining the requirements for a plaintiff to establish a prima facie case of sex discrimination based upon indirect evidence).

**{¶62}** Having reviewed the record de novo, this Court concludes that Swiniarski failed to meet her reciprocal burden of setting forth specific facts demonstrating that a genuine issue of material fact existed as to her claim for sex discrimination. Instead, Swiniarski simply relied upon Weber's isolated comment to support her argument that Weber's alleged bias against women ultimately led to her termination. This Court holds that the trial court did not err by granting summary judgment in favor of Defendants on Swiniarski's claim for sex discrimination. Swiniarski's fourth assignment of error is overruled.

III.

**{¶63}** Swiniarski's assignments of error are overruled. The judgments of the Lorain County Court of Common Pleas are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

MICHAEL TERRENCE CONWAY, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and JACOB W. PULLAR and LEIGH S. PRUGH, Assistant Prosecuting Attorneys, for Appellee.